# In re Samuel JOSEPH, Respondent

## File A90 562 326 - York

*Decided May 28, 1999*

U.S. Department of Justice
Executive Office for Immigration Review
Board of Immigration Appeals

(1) For purposes of determining the custody conditions of a lawful permanent resident under section 236 of the Immigration and Nationality Act, 8 U.S.C. § 1226 (Supp. II 1996), and 8 C.F.R. § 3.19(h)(2)(ii) (1999), a lawful permanent resident will not be considered "properly included" in a mandatory detention category when an Immigration Judge or the Board of Immigration Appeals finds, on the basis of the bond record as a whole, that it is substantially unlikely that the Immigration and Naturalization Service will prevail on a charge of removability specified in section 236(c)(1) of the Act.

(2) Although a conviction document may provide the Service with sufficient reason to believe that an alien is removable under one of the mandatory detention grounds for purposes of charging the alien and making an initial custody determination, neither the Immigration Judge nor the Board is bound by the Service's decisions in that regard when determining whether an alien is properly included within one of the regulatory provisions that would deprive the Immigration Judge and the Board of jurisdiction to redetermine the custody conditions imposed on the alien by the Service. *Matter of Joseph*, 22 I&N Dec. 3387 (BIA 1999), clarified.

(3) When an Immigration Judge's removal decision precedes the determination, pursuant to 8 C.F.R. § 3.19(h)(2)(ii), whether an alien is "properly included" in a mandatory detention category, the removal decision may properly form the basis for that determination.

(4) An automatic stay of an Immigration Judge's release order that has been invoked by the Service pursuant to 8 C.F.R. § 3.19(i)(2) is extinguished by the Board's decision in the Service's bond appeal from that release order.

Sandra L. Greene, Esquire, Philadelphia, Pennsylvania, for respondent

Jeffrey T. Bubier, Assistant District Counsel, for the Immigration and Naturalization Service

Before: Board En Banc: DUNNE, Vice Chairman; HEILMAN, HOLMES, HURWITZ, FILPPU, COLE, MATHON, JONES, GRANT, SCIALABBA, and MOSCATO, Board Members. Concurring and Dissenting Opinion: SCHMIDT, Chairman; joined by VACCA, VILLAGELIU, ROSENBERG, and GUENDELSBERGER, Board Members.

FILPPU, Board Member:

On May 19, 1999, the Board issued an order which dismissed the Immigration and Naturalization Service's appeal from the Immigration Judge's January 20 and 22, 1999, bond orders releasing the respondent on his own recognizance. Our order informed the parties that this decision explaining the reasons for the order would be forthcoming.

## I. THE ISSUES AND SUMMARY

Our jurisdiction in this timely Service appeal is pursuant to 8 C.F.R. § 3.1(b)(7) (1999). *See also Matter of Joseph*, 22 I&N Dec. 3387, at 13-14 (BIA 1999); 8 C.F.R. §§ 3.19(h)(2)(ii), 236.1(c)(11), (d)(3) (1999). Today, we explain the import of our ruling in *Matter of Joseph, supra*, in light of the Service's arguments in this bond appeal. We also address the question of when an Immigration Judge will have jurisdiction to set bond for a lawful permanent resident who has been charged by the Service with a ground of removability that would otherwise require the alien's mandatory detention pending an administratively final order of removal.

As explained below, the Immigration Judge may make a determination on whether a lawful permanent resident "is not properly included" in a mandatory detention category, in accordance with 8 C.F.R. § 3.19(h)(2)(ii), either before or after the conclusion of the underlying removal case. If this threshold bond decision is made after the Immigration Judge's resolution of the removal case, the Immigration Judge may rely on that underlying merits determination.

If the Immigration Judge addresses whether the permanent resident is properly included in a mandatory detention category prior to completion of the case in chief, the Immigration Judge must have very substantial grounds to override the Service's decision to charge the alien with a ground that subjects the alien to detention. Thus, in this context, a lawful permanent resident will not be considered properly included in a mandatory detention category only when an Immigration Judge is convinced that the Service is substantially unlikely to establish, at the merits hearing, the charge or charges that subject the alien to mandatory detention.

In either situation, the Immigration Judge's bond ruling as to whether the alien is "properly included" in a mandatory detention category is subject to the Service's invocation of the "automatic stay" discussed in our prior ruling in this case.

## II. FACTS AND PROCEDURAL HISTORY

The respondent, a native and citizen of Haiti, was admitted as a lawful permanent resident in 1989. The respondent was convicted of the offense of "obstructing and hindering," a crime under the common law of Maryland.

The charge to which the respondent pleaded guilty asserts that he "did intentionally and knowingly obstruct and hinder a police officer . . . in the performance of the [police officer] victim's duties." The respondent received a 1-year sentence. A statement appended to the criminal charging document asserts that the respondent, after departing his residence in a vehicle, was chased by a police officer and was finally apprehended in Delaware after jumping from his moving vehicle. It is not clear why the respondent was being pursued.

It appears that the respondent was taken into Service custody and removal proceedings were commenced in November 1998, charging that he was subject to removal under section 237(a)(2)(A)(iii) of the Immigration and Nationality Act, 8 U.S.C. § 1227(a)(2)(A)(iii) (Supp. II 1996), as an alien who has been convicted of an aggravated felony as defined in section 101(a)(43)(S) of the Act, 8 U.S.C. § 1101(a)(43)(S) (Supp. II 1996) (obstruction of justice). The Immigration Judge, however, terminated the underlying removal proceedings on January 20, 1999, after deciding that the respondent's conviction does not qualify as an aggravated felony.

That same day the Immigration Judge issued an oral order in bond proceedings releasing the respondent from custody. The Immigration Judge followed his January 20, 1999, oral order with a written release order, dated January 22, 1999. The Service timely appealed both the Immigration Judge's decision terminating the respondent's removal proceedings and the Immigration Judge's order releasing the respondent on his own recognizance. The Service obtained an automatic stay of the release order during the pendency of its bond appeal, in accordance with our earlier ruling in this case. *Matter of Joseph, supra*. At present, we only address the Service's appeal from the Immigration Judge's release order and thereby resolve the bond appeal.


## III. THE SERVICE'S POSITION

The Service maintains that the respondent's conviction is for an aggravated felony, that he is therefore ineligible for release, and that the Immigration Judge lacked jurisdiction to redetermine the custody conditions imposed by the Service. The Service further argues that the Immigration Judge's decision in the respondent's removal proceedings, finding that the respondent is not an aggravated felon, is an improper basis for making a bond determination. The Service points out that it has timely appealed the Immigration Judge's removal decision and that it could prevail in its merits appeal. It argues that releasing an alien charged as an aggravated felon would be inconsistent with congressional intent in such circumstances.

Nevertheless, the Service has only provided a brief overview of its arguments on the underlying merits of the removal case, and it declines to "burden these bond proceedings with a complete exposition of its position

on the merits." According to the Service, the respondent remains ineligible for release because his conviction record provided the requisite "reason to believe" that he is removable as an aggravated felon, in accordance with our earlier ruling in this case. *See Matter of Joseph, supra*, at 10 (discussing the "reason to believe" language contained in the regulatory history of the current bond regulations).

## IV. THE GOVERNING LAW

The provisions governing the respondent's detention, pending an administratively final order in removal proceedings, are section 236 of the Act, 8 U.S.C. § 1226 (Supp. II 1996), and the regulations in 8 C.F.R. §§ 3.19 and 236.1. The statute prescribes mandatory detention for certain aliens, including those who are deportable by reason of having committed aggravated felonies. Section 236(c)(1)(B) of the Act. An exception, pertaining to cases involving witness protection, does not apply here. Section 236(c)(2) of the Act.

The regulations generally do not confer jurisdiction on Immigration Judges over custody or bond determinations respecting those aliens subject to mandatory detention, such as aggravated felons. 8 C.F.R. § 3.19(h)(2)(i)(D). The regulations, nevertheless, specifically allow an alien to seek a determination from an Immigration Judge "that the alien is not properly included within" certain of the regulatory provisions which would deprive the Immigration Judge of bond jurisdiction, including the one at issue here. 8 C.F.R. § 3.19(h)(2)(ii). We must examine the import of this latter provision given the present posture of this case.[1]

---

[1] 8 C.F.R. § 3.19(h)(2)(i) provides, in relevant part:

Upon expiration of the Transition Period Custody Rules set forth in section 303(b)(3) of Div. C. of Pub. L. 104-208, an immigration judge may not redetermine conditions of custody imposed by the Service with respect to the following classes of aliens:

. . .

(D) Aliens in removal proceedings subject to section 236(c)(1) of the Act (as in effect after expiration of the Transition Period Custody Rules) . . . .

Aliens convicted of aggravated felonies fall within section 236(c)(1) of the Act, taking them outside the bond and custody jurisdiction of Immigration Judges. Nevertheless, 8 C.F.R. § 3.19(h)(2)(ii) provides in part:

[W]ith respect to paragraphs (h)(2)(i)(C), (D), and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within any of those paragraphs.

In a case such as this, the structure of the bond regulations means that the Immigration Judge's jurisdiction over custody issues is dependent on the answer to the very same question that underlies the charge of removability in the case in chief. In other words, if the respondent is removable as an aggravated felon, the Immigration Judge lacks any bond jurisdiction. Conversely, the Immigration Judge would have authority to redetermine custody conditions if the respondent is not removable as an aggravated felon.

## V. THE REMOVAL DECISION MAY BE A BASIS FOR THE BOND RULING

Given the regulatory scheme, we find no basis to the Service's contention that the Immigration Judge should not be able to use his ruling on the underlying merits of the removal proceedings as the basis for his finding of jurisdiction over the respondent's bond claim. Nothing in the regulations prohibits such action by the Immigration Judge, and the regulatory structure would actually seem to encourage the approach taken by the Immigration Judge, because the essential question is identical in both contexts.

The Immigration Judge could have made a threshold assessment in the bond context of whether the respondent's conviction was properly classified by the Service as an aggravated felony. However, the Immigration Judge elected first to complete the removal hearing. The Immigration Judge found that the respondent had not been convicted of an aggravated felony, the only charge of removability, and terminated the removal proceedings in the respondent's favor. Relying on his removal finding, the Immigration Judge then made a determination in bond proceedings that the respondent was not subject to mandatory detention and ordered his release. Nothing in this sequence of events violates the structure or spirit of the regulations, given that the Service's appeal of the removal order meant that there was no final order in place. *See* 8 C.F.R. § 236.1(d) ("Once a removal order becomes administratively final, determinations regarding custody and bond are made by the district director.").

## VI. *MATTER OF JOSEPH* EXPLAINED

We also reject the Service's contention that the same basis for its initial charge of removability, which we found sufficient for purposes of the automatic stay as well, is adequate in this case to provide the needed "reason to believe" that the respondent is an aggravated felon when we reach the substance of the bond appeal. In this respect, the Service's reading of our decision in *Matter of Joseph, supra*, is erroneous.

What was decided in *Matter of Joseph, supra*, was the question whether an alien remains "subject to" section 236(c)(1) *for automatic stay purposes* after the Immigration Judge has decided that he is not subject to mandatory detention. 8 C.F.R. § 3.19(i)(2). The Service quotes language from that decision stating that "the respondent's conviction record provided the Service with the requisite 'reason to believe' that the respondent was removable as an aggravated felon, and the respondent thus became 'subject to' section 236(c)(1) of the Act when charged with removability under section 237(a)(2)(A)(iii)." *Id.* at 10. The Service appears to argue that the "reason to believe" which led it to bring the aggravated felony charge against the respondent is sufficient to control for bond purposes until the final resolution of the underlying removal case. While the Service's position may often be correct as a practical matter in other cases, this is because the nature of many convictions quite clearly make aliens subject to mandatory detention. But that will not be true in all cases, and we do not find it to be true here.

To clarify what we said in *Matter of Joseph, supra*, the respondent's conviction record provided the Service with the requisite "reason to believe" that he had been convicted of an aggravated felony for purposes of charging and making the initial custody determination. However, the Service's decision in that regard is not unreviewable by the Immigration Judge or the Board in either the bond or the removal context. We found in *Joseph* that the automatic stay regulation was intended as a means for the Service to preserve the "status quo" of the district director's determination that the respondent must be detained, but only until we decide the Service's appeal from the Immigration Judge's release order. *Matter of Joseph, supra,* at 16.

The Service evidently misunderstands the discussion in our earlier decision of the regulatory history of the automatic stay provision, which provides that the Board retains full authority to accept or reject the Service's contentions in its bond appeal. *See* Procedures for the Detention and Release of Criminal Aliens by the Immigration and Naturalization Service and for Custody Redeterminations by the Executive Office for Immigration Review, 63 Fed. Reg. 27,441, 27,447 (1998); *Matter of Joseph, supra*, at 12. The Service's position fails to recognize either the Immigration Judge's or the Board's role in the detention review process, apparently viewing our authority as being confined to looking only to whether the Service had a basis for charging the respondent with removability under one of the grounds listed in section 236(c)(1) of the Act.

Our role in this appeal is, instead, to determine whether the Immigration Judge correctly found that the respondent was not properly included in the mandatory detention scheme. This requires consideration of the evidence and argument offered during the bond proceedings on this question and of the force of the Immigration Judge's reasoning. It is more

than just a perfunctory review and ratification of the fact that the Service may have had a "reason to believe" the respondent was an aggravated felon at the time it began the proceedings.

## VII. THE INTERPRETATION OF 8 C.F.R. § 3.19(h)(2)(ii)

Our construction of the regulation at issue here flows directly from what we said in *Matter of Joseph*. Any presumption that the respondent is an aggravated felon based on his conviction record and the charge brought by the Service is insufficient, by itself, to control the outcome of the bond appeal if the record as a whole shows otherwise. In this regard, we understand that the very purpose of the regulation, 8 C.F.R. § 3.19(h)(2)(ii), is to provide an alien, such as the respondent, with the opportunity to offer evidence and legal authority on the question whether the Service has properly included him within a category that is subject to mandatory detention.

Here, the Immigration Judge was convinced by the respondent's arguments that his Maryland common law "obstructing and hindering" charge is not an aggravated felony. The Immigration Judge compared the Maryland case law argued by the respondent to federal law and agreed with the respondent that the elements of the crime, and the types of conduct which it includes, are not analogous to "obstruction of justice" as contemplated by the aggravated felony definition at section 101(a)(43)(S) of the Act.

The Service argues, however, that it has appealed the merits decision terminating removal proceedings. And it contends the following in its appeal brief: "If the Service turns out to be right, absent the Board's sustaining of the instant bond appeal, the respondent, an aggravated felon subject to mandatory custody, will have been released from custody. That is not the disposition envisioned by Congress in enacting the mandatory custody provision of section 236(c)."

But this case involves a lawful permanent resident who has been charged with only one ground of removability. Under our laws, the respondent would be allowed to reside and work in the United States, but for the pendency of the aggravated felony charge brought by the Service. And, as noted above, the bond regulations specifically accord a level of protection for aliens charged with grounds that would require mandatory detention. Those regulations allow for an independent assessment by an Immigration Judge and the Board, in the preliminary bond context, of whether the alien is "properly included" in a category subject to mandatory detention.

The mere fact that the Service has appealed in the underlying removal case, and in theory could prevail, cannot be sufficient, by itself, to require the reversal of the Immigration Judge in this bond appeal. If it were, there would seem to be little or no point to the regulatory provision that allows the

Immigration Judge, and the Board on appeal, to make a determination on whether the alien is "properly included" in a mandatory detention category.

A determination in favor of an alien on this issue does not lead to automatic release. It simply allows an Immigration Judge to consider the question of bond under the custody standards of section 236(a) of the Act. Yet, under the Service's approach, an alien such as the respondent would seem to have no recourse to that ordinary bond provision, even in cases where the Service is wrong in its charge and will lose on appeal. As we explained in connection with our discussion of *Matter of Joseph* above, the regulation must have meaning beyond simply allowing for a perfunctory review of the basis for the Service's charge. Indeed, the regulatory history indicates that this rule was intended to provide "for an individualized hearing on whether an alien in custody *actually* falls within a category of aliens subject to mandatory detention." 63 Fed. Reg. at 27,444 (emphasis added).

This, however, is a case of first impression, and the regulations do not spell out the precise role of an Immigration Judge or the Board in assessing, in the bond context, whether an alien is "properly included" in a mandatory detention category. Yet, this case also involves a lawful permanent resident. And, as we explain below, we find that the Service is substantially unlikely to establish the charge of deportability in its appeal of the underlying removal case. Under such circumstances, we find it inappropriate to continue to treat the respondent as an alien who is subject to mandatory detention, if we are to give meaningful life to the regulations allowing for an examination by Immigration Judges and the Board of this question. Thus, subject to the automatic stay provision, we determine that a lawful permanent resident will not be considered "properly included" in a mandatory detention category when an Immigration Judge or the Board is convinced that the Service is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention.

The Immigration Judge here issued his bond ruling after the conclusion of the removal case. As indicated above, the Immigration Judge was entitled to rely on that merits decision in making the related bond determination that the respondent was not properly included in a mandatory detention category.

The regulations, however, allow this determination to be made by the Immigration Judge at a very early stage of the overall proceedings. The Service is, of course, entitled to bring any charge it deems warranted in a given case. Importantly, as the Service points out, the statutory scheme envisions the detention of aliens subject to grounds such as the aggravated felony charge here. Consequently, the Immigration Judge must have very substantial grounds to override the custodial effect of the Service's charge in those cases where the Immigration Judge addresses whether the permanent resident is properly included in a mandatory detention category prior

to completion of the merits hearing.

It follows from what we said in *Matter of Joseph, supra*, at 10, that the "reason to believe" that the alien "falls within a category barred from release," which led the Service to bring a particular charge, can often be expected to suffice until the Immigration Judge resolves the merits of the removal case, a resolution that frequently occurs speedily in cases involving detained criminal aliens. 63 Fed. Reg. at 27,444-45. But the Immigration Judge is able to examine the basis for that charge and make an independent determination whether the alien "actually falls within a category of aliens subject to mandatory detention." *Id.* at 27,444. In requiring that the Immigration Judge be convinced that the Service is substantially unlikely to prevail on its charge, when making this determination before the resolution of the underlying case, we provide both significant weight to the Service's "reason to believe" that led to the charge and genuine life to the regulation that allows for an Immigration Judge's reexamination of this issue.

In addition, we note that the bond regulations generally allow for great flexibility in making rulings on custody issues. For example, 8 C.F.R. § 3.19(d) provides in part: "The determination of the Immigration Judge as to custody status or bond may be based upon any information that is available to the Immigration Judge or that is presented to him or her by the alien or the Service."

Further, in assessing whether an alien is "properly included" in a mandatory detention category during a bond hearing taking place early in the removal process, the Immigration Judge must necessarily look forward to what is likely to be shown during the hearing on the underlying removal case. Thus, for example, the failure of the Service to possess a certified copy of a conviction record shortly after taking an alien into custody would not necessarily be indicative of its ability to produce such a record at the merits hearing. And the same could be true of evidence tendered by the alien during an early bond hearing.

## VIII. THE SERVICE'S PROSPECT FOR SUCCESS IN THE REMOVAL CASE

Turning to the bond record in this case, we do have evidence respecting the respondent's conviction for "obstructing and hindering" under Maryland law. We agree with the Immigration Judge that this evidence strongly indicates that the respondent's conviction resulted from his actions to obstruct or hinder his own arrest.

The Maryland case law relied upon by the Immigration Judge, *Cover v. State*, 466 A.2d 1276 (Md. 1983), reflects that the crime of obstructing and hindering encompasses three types of offenses: (1) positive direct obstruction (i.e. resisting one's own arrest), (2) passive direct obstruction (where a

subject refuses or fails to act as directed by a police officer), and (3) positive indirect obstruction (where the police are not acting directly against the subject, but are acting indirectly against another who has committed, or may commit, a criminal offense, and the subject does an act which obstructs them in their general duty to prevent or detect crime, intending to frustrate them in the performance of that duty).

At least in this bond case, the Service has provided little to challenge the Immigration Judge's determination that the respondent's offense is not correctly classified as an aggravated felony. The Service cites to *Matter of Batista-Hernandez,* 21 I&N Dec. 955 (BIA 1997), as support for its position. However, we agree with the Immigration Judge that, unlike *Batista-Hernandez*, the respondent in the present case was seeking to evade his own arrest, rather than obstructing the arrest of another. The Service's reliance on *United States v. John*, 935 F.2d 644 (4th Cir. 1991), is likewise unpersuasive. This sentence enhancement case indicates that mere flight from an arresting officer is not sufficient, in itself, to warrant an adjustment of a defendant's offense level under the obstruction of justice provision in the United States Sentencing Guidelines in U.S.S.G. § 3C1.1 (1990). See 18 U.S.C.A. ch. 3, § 3C.1.1 (West 1996). The Service has also not addressed the Immigration Judge's reliance on the Supreme Court's decision in *United States v. Aguilar,* 515 U.S. 593, 599 (1995), for the proposition that an "intent to influence judicial or grand jury proceedings" is more the sort of activity constituting an "obstruction of justice" under the Act than is the respondent's conviction for obstructing or hindering his own arrest in a manner that does not appear to have endangered the officer.

We do not purport to make a final ruling on whether the respondent's conviction falls within the aggravated felony provision of section 101(a)(43)(S). The possibility remains that the Service might offer some convincing argument in its merits appeal. However, it opted not to do so here. On the basis of this bond record, it appears that Maryland's "obstructing and hindering" law is divisible, encompassing the conduct of resisting one's own arrest. Even if some of the other categories of activities included in this crime might potentially be construed as obstruction of justice, we find that it is substantially unlikely that the offense of simply obstructing or hindering one's own arrest will be viewed as an obstruction of justice aggravated felony under section 101(a)(43)(S) of the Act for removal purposes. Consequently, we agree with the Immigration Judge that the respondent is not "properly included" in the category of aliens subject to mandatory detention for bond or custody purposes. 8 C.F.R. § 3.19(h)(2)(ii).


## IX. THE RELEASE ORDER

Our determination, in agreement with the Immigration Judge, that the

respondent is not properly included in a mandatory detention category would not ordinarily end the bond inquiry. It simply means that the lawful permanent resident could be considered by the Immigration Judge for release under the general bond provisions of section 236(a) of the Act. In this case, however, the Service has not challenged the specific terms of the Immigration Judge's release order in its appeal brief.

Consequently, for the foregoing reasons, on May 19, 1999, we entered an order which extinguished the automatic stay that had attached upon the tendering of the Form EOIR-43 (Notice of INS Intent to Appeal Custody Redetermination) by the Service in this case. We now repeat that order for the sake of clarity.

**ORDER:** The appeal taken by the Service is dismissed.

**FURTHER ORDER:** The respondent shall be released pursuant to the terms of the Immigration Judge's January 22, 1999, bond order.

*CONCURRING AND DISSENTING OPINION:* Paul W. Schmidt, Chairman; in which Fred W. Vacca, Gustavo D. Villageliu, Lory D. Rosenberg, and John Guendelsberger, Board Members, joined

I respectfully concur in part and dissent in part.

I join entirely in the majority's rejection of the Immigration and Naturalization Service's appellate arguments and in the unanimous conclusion that, on this record, the Service is substantially unlikely to prevail on the merits of the aggravated felony charge. Therefore, I agree that the respondent is not properly included in the category of aliens subject to mandatory detention for bond or custody purposes.

However, I do not share the majority's view that the proper standard in a mandatory detention case involving a lawful permanent resident alien is that the Service is "substantially unlikely to prevail" on its charge. *Matter of Joseph,* 22 I&N Dec. 3398, at 10 (BIA 1999). Rather, the standard in a case such as the one before us should be whether the Service has demonstrated a likelihood of success on the merits of its charge that the respondent is removable because of an aggravated felony.

Mandatory detention of a lawful permanent resident alien is a drastic step that implicates constitutionally-protected liberty interests. Where the lawful permanent resident respondent has made a colorable showing in custody proceedings that he or she is not subject to mandatory detention, the Service should be required to show a likelihood of success on the merits of its charge to continue mandatory detention. To enable the Immigration Judge to make the necessary independent determination in such a case, the Service should provide evidence of the applicable state or federal law under which the respondent was convicted and whatever proof of conviction that is available at the time of the Immigration Judge's inquiry.

The majority's enunciated standard of "substantially unlikely to pre-

809

vail" is inappropriately deferential to the Service, the prosecutor in this matter. Requiring the Service to demonstrate a likelihood of success on the merits of its charge would not unduly burden the Service and would give more appropriate weight to the liberty interests of the lawful permanent resident alien. Such a standard also would provide more "genuine life to the regulation that allows for an Immigration Judge's reexamination of this issue," as referenced by the majority. *Matter of Joseph, supra*, at 10.

The Service's failure to establish a likelihood of success on the merits would not result in the release of a lawful permanent resident who poses a threat to society. Continued custody of such an alien would still be warranted under the discretionary criteria for detention.

In conclusion, mandatory detention should not be authorized where the Service has failed to demonstrate a likelihood of success on the merits of its charge. Consequently, while I am in complete agreement with the decision to release this lawful permanent resident alien, and I agree fully that the Service is substantially unlikely to prevail on the merits of this aggravated felony charge, I respectfully dissent from the majority's enunciation of "substantially unlikely to prevail" as the standard to be applied in all future cases involving mandatory detention of lawful permanent resident aliens.