CALLAHAN, Circuit Judge, dissenting:
As I find that the district court properly denied Monsuro Tijani’s habeas petition, I dissent from the remand of this case to the district court. I further disagree with the opinion’s suggestion that the result of a hearing must be Tijani’s release on bail, and with the concurring opinion’s argument that Tijani’s extended detention is necessarily unconstitutional.
A. Background
An appreciation of this case requires a brief review of how Tijani got himself into his present predicament. A native and citizen of Nigeria, Tijani arrived in the United States in 1980 and adjusted his status to legal permanent resident in 1985. Shortly thereafter, Tijani started having trouble with the law. Most recently on June 9, 1999, Tijani was convicted on twelve counts of providing false information on financial documents in violation of California Penal Code § 532a(l).
On April 9, 2003, when Tijani was scheduled to be paroled from state prison, he was charged with being deportable, served with a notice to appear before an Immigration Judge (“IJ”), and transferred into the custody of the U.S. Bureau of Immigration and Customs Enforcement (“BICE”). He was specifically charged with being removable- under 8 U.S.C. § 1227(a)(2)(A)(ii), based on his status as an alien convicted of two crimes involving moral turpitude, and under 8 U.S.C. § 1227(a)(2)(A)(iii), based on his status as an alien convicted of an aggravated felony.
The BICE determined that Tijani was subject to mandatory deténtion pursuant to 8 U.S.C. § 1226(c), and should be held without bond during the removal proceedings. Tijani contested the detention and requested a bond-determination hearing. A hearing was held before an IJ, in accordance with the Board of Immigration Appeals’ (“BIA”) decision of In re Joseph (“Joseph ”), 22 I. & N. Dec. 799 (BIA 1999) (en banc). The IJ affirmed the BICE’s determination, finding both that Tijani was “subject to mandatory custody” and that he “pose[d] a danger to the property of others due to his lengthy criminal record.” On June 26, 2003, the BIA affirmed the IJ’s decision that Tijani was subject to mandatory detention.
Tijani then filed his habeas petition in the United States District Court for the Southern District of California, arguing, inter alia, that he did not pose a danger to the community and that mandatory detention violated the Due Process Clause of the Fifth Amendment. On January 21, 2004, the district court denied Tijani’s petition. It found that mandatory detention was constitutional, citing Demore v. Kim, 538 U.S. 510, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003), and that Tijani was subject to mandatory detention because his particular conviction under California Penal Code § 532a(l) constituted a crime of moral turpitude. Tijani filed a timely notice of appeal to this court.[1]
*1251 B. The Standard for Mandatory Detention
I agree with the district court that, under Demore, mandatory detention pursuant to 8 U.S.C. § 1226(c) is not per se unconstitutional. In Demore, the Supreme Court held:
Detention during removal proceedings is a constitutionally permissible part of that process. See, e.g., Wong Wing [v. United States,] 163 U.S. [228, 235, 16 S.Ct. 977, 41 L.Ed. 140 (1896)] (“We think it clear that detention, or temporary confinement, as part of the means necessary to give effect to the provisions for the exclusion or expulsion of aliens would be valid”); Carlson v. Landon, 342 U.S. 524, 72 S.Ct. 525, 96 L.Ed. 547 (1952); Reno v. Flores, 507 U.S. 292, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). The INS detention of respondent, a criminal alien who has conceded that he is de-portable, for the limited period of his removal proceedings, - is governed by these cases.
538 U.S. at 531, 123 S.Ct. 1708.
Tijani, of course, is concerned with the application of the statute to him rather than its abstract constitutionality. In particular, Tijani raises constitutional challenges to the scope of mandatory detention under § 236(a) as interpreted in Joseph.[2] He argues that mandatory detention should not extend to lawful permanent residents held beyond a brief period of time because there is little likelihood that they will flee’ or endanger the community. He also contends that principles of procedural due process prohibit the mandatory detention of lawful permanent residents who raise substantial arguments.
Even assuming that the scope of § 236(c) as interpreted by Joseph is problematic,[3] it is by no means certain that Tijani is entitled to release. In addition to having been denied relief by an IJ, the BIA, and the district court, Tijani has also been found removable by both an IJ and the BIA.’ Moreover, contrary to the position taken by Judge Tashima in his concurring opinion, I am not persuaded by Tija-ni’s contentions that he did not commit an aggravated felony and that his conviction was not for a crime involving moral turpitude. Thus, even were Tijani to prevail on his claim that § 236(a) is unconstitutional because it requires a showing that the government is unlikely to prevail in the removal proceedings, it is by no means *1252 clear that he would be entitled to release under any alternate standard for bail.
C. Duration of Detention
Tijani further argues that the duration of his detention under 8 U.S.C. § 1226(c) is unconstitutional- The constitutional limit, if any, to the duration of an alien’s detention under § 1226, however, was left open by the Supreme Court in Demote. In discussing its prior opinion in Zadvydas v. Davis, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001), the Court noted first that in Zadvydas, the aliens challenging their detention following final orders of deportation were ones for whom removal was “no longer practically attainable” and therefore detention did not serve the purported immigration purpose. Demore, 538 U.S. at 526, 123 S.Ct. 1708. The Court further stated:
Zadvydas is materially different from the present case in a second respect as well. While the period of detention at issue in Zadvydas was “indefinite” and “potentially permanent,” 533 U.S., at 690-691, 121 S.Ct. 2491, 150 L.Ed.2d 653, the detention here is of a much shorter duration. Zadvydas distinguished the statutory provision it was there considering from § 1226 on these very grounds, noting that “post-removal-period detention, unlike detention pending a determination of removability ..., has no obvious termination point.” Id., at 697, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (emphasis added). Under § 1226(c), not only does detention have a definite termination point, in the majority of cases it lasts for less than the 90 days we considered presumptively valid in Zadvydas.
Id. at 528-29, 123 S.Ct. 1708. This statement may be read as implying a limit to the duration of detention pending a determination of removability,[4] or as holding that because the removal proceedings are by definition finite, there is no constitutional limit to the duration of detention under 1226(c).[5]
*1253 I agree with Judge Noonan that we need not and should not resolve this issue at this time. I would simply hold that when the district court on January 21, 2004, denied Tijani’s habeas petition, he had not shown that the duration of his detention under § 1226 was unconstitutional. Accordingly, I would not remand this matter.
Rather, Tijani would be better advised to seek relief anew before the agency or in the district court where the effects of intervening events and the passage of time could be fully presented and briefed. Among other potentially relevant concerns that might be considered are (a) the impact of the intervening decisions by the IJ and the BIA that Tijani is removable;[6] (b) whether the passage of time or the above decisions give rise to any alternate administrative remedies for Tijani; (c) whether any delays were attributable to Tijani; and (d) whether the delays give rise to an implication that detention no longer serves the purported immigration purposes.
D. Conclusion
The troubling nature of this case is underscored by the fact that each member of our panel has written separately. I agree with the district court’s denial of Tijani’s habeas petition and, accordingly, would not remand the case to the district court. As the panel has remanded this matter, however, I have explained that it is not clear (1) that the detention of an alien pending removal proceedings is necessarily unconstitutional regardless of how long those proceedings take,[7] and (2) that a new hearing pursuant to the panel’s decision must result in Tijani’s release, pending the completion of his removal proceedings.

. Meanwhile, Tijani's removal proceedings continued. On November 5, 2003, an IJ ordered Tijani removed from the United States. Tijani appealed to the BIA, which, on December 30, 2004, summarily affirmed the IJ’s decision of removal. Tijani has filed a peti *1251 tion for review with this court, which is not before this panel.

. In Joseph, the BIA held that “a lawful permanent resident will not be considered 'properly included’ in a mandatory detention category when an Immigration Judge or the Board is convinced that the[government] is substantially unlikely to establish at the merits hearing, or on appeal, the charge or charges that would otherwise subject the alien to mandatory detention.” 22 I. & N. Dec. at 806.

. The Supreme Court’s reference to Joseph in Demore suggests that the BIA's opinion is not clearly unconstitutional. The Court noted:
This "Joseph hearing” is immediately provided to a detainee who claims that he is not covered by § 1226(c). Tr. of Oral Arg. 22. At the hearing, the detainee may avoid mandatory detention by demonstrating that he is not an alien, was not convicted of the predicate crime, or that the INS is otherwise substantially unlikely to establish that he is in fact subject to mandatory detention. See 8 CFR § ’3.19(h)(2)(H) (2002); Matter of Joseph, 22 I. & N. Dec. 799, 1999 WL 339053 (BIA 1999). Because respondent conceded that he was deportable because of a conviction that triggers § 1226(c) and thus sought no Joseph hearing, we have no occasion to review the adequacy of Joseph hearings generally in screening out those who are improperly detained pursuant to § 1226(c).
Demore, 538 U.S. at 515, 123 S.Ct. 1708 n. 3.

. Justice Kennedy, in his concurring opinion, wrote:
since the Due Process Clause prohibits arbitrary deprivations of liberty, a lawful permanent resident alien such as respondent could be entitled to an individualized determination as to his risk of flight and dangerousness if the continued detention became unreasonable or unjustified. Zadvydas, 533 U.S., at. 684-686, 121 S.Ct. 2491, 150 L.Ed.2d 653; id., at 721, 533 U.S. 678, 121 S.Ct. 2491, 150 L.Ed.2d 653 (KENNEDY, J., dissenting) ("[Alliens are entitled to be free from detention that is arbitrary or capricious"). Were there to be an unreasonable delay by the [government] in pursuing and completing deportation proceedings, it could become necessary then to inquire whether the detention is not to facilitate deportation, or to protect against risk of flight or dangerousness, but to incarcerate for other reasons.
538 U.S. at 532-33, 123 S.Ct. 1708. It should be noted that there is little before us to suggest that Tijani's continued detention is not to protect against dangerousness. I note that the IJ in his November 5, 2003 order of removal (affirmed by the BIA on December 30, 2004) stressed that he found Tijani to be a danger to the community.

. The reasons for detaining criminal aliens pending removal do not diminish over the duration of their detention. This is reflected in the following comments by the Supreme Court in Demore: "Congress also had before it evidence that one of the major causes of the INS’ failure to remove deportable criminal aliens was the agency's failure to detain those aliens during their deportation proceedings[;]” (538 U.S. at 519, 123 S.Ct. 1708) “[t]he Vera Institute study strongly supports Congress’ concern that, even with individualized screening, releasing deportable criminal aliens on bond would lead to an unacceptable rate of flight[;]” (id. at 520, 123 S.Ct. 1708) and "[s]ome studies presented to Congress suggested that detention of criminal aliens during their removal proceedings might be the best way to ensure their successful removal from this country.... It was following those Reports that Congress enacted 8 U.S.C. *1253 § 1226, requiring the Attorney General to detain a subset of deportable criminal aliens pending a determination of their removability." Id. at 521, 123 S.Ct. 1708.

. For example, although Judge Tashima disagrees (see footnote 7 of his concurrence), the government in its letter of January 5, 2005 suggested thatTijani's detention may-now fall under 8 U.S.C. § 1231(a) in light of the final order of removal.

. Different considerations would come into play if there were any evidence that the government was unreasonably prolonging the removal proceedings.