Juan J. GARZA–GARCIA, Petitioner,

v.

Marc MOORE, et al., Respondent.

Civil No. B–07–067.

United States District Court,
S.D. Texas,
Brownsville Division.

Oct. 18, 2007.

Elisabeth Lisa S. Brodyaga, Attorney at Law, San Benito, TX, for Petitioner.

Rene Carlo Benavides, U.S. Attorney's Office, Southern District of Texas, McAllen, TX, for Respondent.

## *OPINION*

FELIX RECIO, United States Magistrate Judge.

Before the Court is Plaintiff Juan Jose Garza–Garcia's Claim for Declaratory Judgment and his Petition for Writ of Habeas Corpus under 28 U.S.C. § 2241. Petitioner Garza–Garcia alleges that he is currently being detained in violation of the laws and Constitution of the United States by virtue of his mandatory detention without an opportunity to contest his designation as the type of alien subject to mandatory detention pursuant to 8 C.F.R. § 1003.19(2)(i)-(ii) (2007). For the reasons set forth below, this court GRANTS Petitioner's writ.

## MAGISTRATE JUDGE'S JURISDICTION

This case was transferred from United States District Judge Hilda Tagle to United States Magistrate Judge Felix Recio pursuant to 28 U.S.C. § 636(c). All par-

ties have waived their right to proceed before a district judge and consented to have a U.S. Magistrate Judge conduct all proceedings, including trial and judgment. (Doc. 8).

## BACKGROUND

Petitioner Juan Jose Garza–Garcia is currently detained by Immigration and Customs Enforcement ("ICE") at Los Fresnos, Texas. He is a native of Mexico and a lawful permanent resident ("LPR") of the United States. On December 7, 2004 Garza sought admission into the United States at a port of entry in Brownsville, Texas, and was detained based on an outstanding military charge of being absent without leave ("AWOL"). At the time he was detained, a Customs and Border Patrol ("CBP") Officer prepared and served on Garza a Notice to Appear ("NTA"), charging him with removability as an arriving alien who was inadmissable for having departed the U.S. to avoid training or service in the armed forces, within the meaning of 8 U.S.C. § 1182(a)(8)(B). (Doc. 1–2, Exhibit A, pgs. 3–4). At this time Garza was transferred into military custody, where he was court-martialed and convicted of AWOL. He was sentenced to time served, about 70 days, given a "bad conduct" discharge, and released. Garza returned to Brownsville in February of 2005, where he resumed his job with Garcia Trucking. (Doc. 4).

For reasons not entirely clear,[1] Garza presented himself at Immigration and Naturalization Service's ("INS") Harlingen office on October 10, 2006. There he was arrested and held on a $5,000 bond pursuant to 8 U.S.C. § 1226. At this time, INS prepared a "Record of Deportable/Inadmissable Alien," form I–213, which stated that the "NTA was amended and is included in the A–File." See Pet's Writ of Habeas Corpus, Exhibit A, at 7–8. (Doc. 1–2, pg. 7–8). However, this amended NTA has never been filed. The Notice of Custody Determination, form I–286, also prepared on October 10, 2006, advised Garza that he was being taken into custody pursuant to Section 236 of the Immigration and Nationality Act (8 U.S.C. § 1226) and that he was eligible for a bond re-determination hearing. See Pet's Writ of Habeas Corpus, Exhibit A, at 7. (Doc. 1–2, pg. 7).[2]

---

**1.** Counsel for Petitioner stated in the initial habeas petition that Garza appeared at INS's Harlingen office "under an agreement with prior counsel." See Pet's Writ of Habeas Corpus at 2. In a subsequent pleading, Petitioner's counsel merely states that Garza "went to Respondents' Harlingen office, where he was arrested . . ." See Pet's Brief In Support of Relief Requested at 3. A Declaration made by Garza and submitted as proof in his Immigration proceedings and as an exhibit to his habeas petition seems to reveal that Garza reported to the Harlingen office upon his return from military custody, around March of 2005, to apply for a new LPR card because he could no longer locate his existing card. He was given a provisional card, and from that point on returned to the Harlingen office every three months to renew his provisional card. The court can only speculate that at some point during his regular visits to renew his provisional card, Garza and/or his previous attorney entered into an agreement whereby Garza would present himself on October 10, 2006 for removal proceedings. See Pet's Writ of Habeas Corpus, Exhibit C.

**2.** Under the applicable laws and regulations, "arriving aliens" are not eligible for bond. Petitioner argues that the fact that he was given the right to a bond is evidence of the fact that he was not properly designated an arriving alien. Because this Court does not address the merits of whether petitioner was properly designated an arriving alien, we will not address the weight of this argument. We note the argument for the sake of completeness. However, pursuant to the order on this opinion, we leave the issue of whether Garza was properly designated an "arriving alien" to the discretion of the Attorney General, exercised through an Immigration Judge in the ordered *Joseph* hearing.

Garza requested a bond re-determination hearing and a hearing was held on October 16, 2006. However, the Immigration Judge ("IJ") found that, pursuant to 8 C.F.R. § 1003.19(2)(ii),[3] he lacked jurisdiction to determine whether Garza was properly designated an "arriving alien," and because Garza was so designated he had no authority to re-determine Garza's bond.[4] Thereafter, Garza posted the $5,000 bond, was released, and was given a copy of his Warrant for Arrest of Alien, form I–200, marked "for identification purposes only" and stamped "bond posted."[5] Garza remained out on bond until May 21, 2007, when he appeared before Immigration Judge Peterson for a scheduled hearing on the merits of the initial charge of removability.[6] At the beginning of the hearing, Garza was served with an Additional Charge of Inadmissability/Deportability, form I–261, alleging that he was removable as a criminal alien for having committed a crime of moral turpitude under Section 212(a)(2)(A)(i)(I) of the INA (8 U.S.C. § 1227(a)(2)(A)(i)(I)). *See* Pet's Writ for Habeas Corpus, Exhibit A, at 12–13. Garza's lawyer requested time to ad-dress the new charge, and the case was adjourned.

The new charge made Mr. Garza subject to mandatory detention as a criminal alien pursuant to 8 U.S.C. § 1226(c), and ICE agents arrested him and sent him to the Port Isabel Detention Center where he remains currently without bond. On June 29, 2007, Immigration Judge Peterson ruled on the merits in Garza's removal proceedings. Judge Peterson found for Garza on both charges of removability, finding that AWOL was not a crime of moral turpitude and that Garza had not departed the U.S. to avoid training or service in the military, and therefore terminated the removal proceedings. *See* Pet's Writ of Habeas Corpus, Exhibit F. (Doc. 15). However, on July 18, 2007, DHS filed an appeal of the IJ's decision to the Board of Immigration Appeals ("BIA"), legally rendering the IJ's order not final and preventing Garza's release. *See* Pet's *Writ of Habeas Corpus*, Amended Exhibit G. (Doc. 16). In its Notice of Appeal, form EOIR–26, DHS asserted the IJ's decision on the merits of both issues was erroneous, ar-

---

**3.** 8 C.F.R. § 1003.19(h)(2)(ii) provides, in pertinent part, that:

> with respect to paragraphs (h)(2)(i)(C), (D), and (E) of this section, nothing in this paragraph shall be construed as prohibiting an alien from seeking a determination by an immigration judge that the alien is not properly included within any of those paragraphs.

The regulation notably leaves out paragraph (h)(2)(i)(B), "arriving aliens in removal proceedings." The included paragraphs, (h)(2)(i)(C), (D), and (E), all three describe other classifications of aliens in removal proceedings or deportation proceedings, for charges prescribed the Act.

**4.** This is because 8 C.F.R. § 1003.19(h)(2)(i) strips an Immigration Judge of the authority to redetermine conditions of custody imposed by the Service with respect to specified classes of aliens, including "arriving aliens in

removal proceedings." *See* 8 C.F.R. § 1003.19(h)(2)(i)(B).

**5.** Counsel for Petitioner asserts that the warrant noted that Garza "entered" the United States on December 7, 2004, and that this is proof of that he is not properly designated an arriving alien. *See* Pet's Writ of Habeas Corpus at 3. While the warrant did so note, this Court reiterates that it is not ruling on the merits of whether Garza was properly designated an arriving alien. It is unclear to this Court, which is not a specialist in the complex immigration laws of this country, whether the use of the word "entered" on the warrant has any legal significance to his alien status.

**6.** The initial charge was from the 2004 NTA, which alleged that Garza was an "arriving alien" inadmissable for having departed the U.S. to avoid training or service in the armed forces. *See* 8 U.S.C. § 1182(a)(8)(B).

gued for the BIA to overturn or distinguish a prior decision holding that desertion during a time of war was not a crime of moral turpitude, and requested that a three-member panel hear the appeal. *Id.*

On August 6, 2007, Petitioner Garza filed another motion for a bond re-determination hearing with the Immigration Court. The Immigration Judge again denied his request for change in custody status based on Garza's designation on the original NTA as an "arriving alien." *See* Pet's Writ of Habeas Corpus, Exhibit H. Petitioner has since filed a Motion for Summary Judgment with this court, the government has filed a Response, and Petitioner has filed a Reply to the government's Response.[7] This Court held a hearing on the matter on October 2, 2007, where it stated that it was strongly leaning towards granting the relief requested by Garza. On October 16, 2007 this Court received notice from Garza's counsel that the BIA had issued an opinion dismissing DHS's appeal and affirming the Immigration Judge's ruling. *See* Pet's Writ for Habeas Corpus, Ex. J. (Doc. 25). Counsel for the Petitioner informed the Court through a Declaration Under Penalty of Perjury that Garza was still detained and that an officer at the detention center informed Counsel that a decision had been made to continue detaining Mr. Garza–Garcia because it anticipated a motion to reconsider the decision of the BIA would be filed. *See* Petr.'s Writ for Habeas Corpus, Ex. J. (Doc. 26). As of today, more than two weeks after the BIA decision, Petitioner remains in custody.

### ALLEGATIONS

Petitioner alleges that 8 C.F.R. § 1003.19(2)(ii), which allows for his man-datory detention without the right to a hearing to challenge whether he is properly within the category of alien that subjects him to mandatory detention, is inconsistent with the statutory scheme. Petitioner argues that the regulation must be interpreted to allow a hearing to contest a designation that subjects one to mandatory detention, or in the alternative, that the regulation must be overturned as inconsistent with Section 1226 and/or a violation of both substantive and procedural due process. We address both arguments in turn.

### JURISDICTION

■ This court has proper habeas jurisdiction over this matter under Section 2241 because it involves a question of the Attorney General's statutory authority and the legality of an administrative agency's regulatory framework. Section 1226(e) strips a federal court of jurisdiction to review discretionary judgments of the Attorney General, however it does not remove jurisdiction to determine questions of law regarding the AG's statutory authority or the regulatory framework. *See* 8 U.S.C. § 1226(e) (2007); *see also, e.g., Oyekunmi v. Chertoff,* 125 Fed.Appx. 543 (5th Cir.2005); *Zadvydas v. Davis,* 533 U.S. 678, 688, 121 S.Ct. 2491, 150 L.Ed.2d 653 (2001).

Garza's continued detention clearly does not involve a discretionary decision of the Attorney General. Two different immigration judges have held they lack the authority to exercise their discretion on Garza's behalf based on the regulation at hand, and numerous other immigration judges have reached the same conclusion in other

---

**7.** Because this opinion addresses the merits of Petitioner's Writ for Habeas Corpus and grants the Petitioner's writ, the Court need not rule on the motion for summary judgment.

cases based on this regulation.[8] This Court retains jurisdiction to review Garza's detention "insofar as that detention presents constitutional issues, such as those raised in a habeas petition." *Oyelude*, 125 Fed.Appx. at 546, (citing *Demore v. Kim*, 538 U.S. 510, 516–17, 123 S.Ct. 1708, 155 L.Ed.2d 724 (2003)).

As another threshold matter, this Court must also address the government's contention that this action is premature because Petitioner has not yet exhausted his administrative remedies. Since making this argument the Board of Immigration Appeals has ruled on Petitioner's behalf. The Court has been informed that the government plans to file a motion to reconsider the decision, and if such a motion were filed the IJ's order would continue to lack finality and administrative exhaustion would not be complete. To the extent that the Government's argument that the administrative process should conclude before a federal court hears the habeas petition is not moot, the Court notes that administrative exhaustion is inappropriate here. *See* Defs.' Resp. to Petr.'s Mot. for Summ. J. at 3 (Doc. 22); Resp.'s Br. on Administrative Remedies (Doc. 13).

■■■ It is well settled that federal law generally requires exhaustion of administrative remedies before a petitioner may seek habeas relief. *See, e.g., Dilworth v. Johnson*, 215 F.3d 497 (5th Cir.2000); *McCarthy v. Madigan*, 503 U.S. 140, 144–45, 112 S.Ct. 1081, 117 L.Ed.2d 291 (1992). When Congress fails to specifically mandate that exhaustion is required before a party may seek judicial review, the need for exhaustion is left to the sound discre-

tion of the Court. *McCarthy*, 503 U.S. at 144, 112 S.Ct. 1081. In exercising its discretion, the Court must balance the interest of the individual in retaining prompt access to a federal forum against "countervailing institutional interests favoring exhaustion." *Id.* Under the INA exhaustion of administrative remedies is only required by Congress for appeals on final orders of removal. *See* 8 U.S.C. § 1252(d)(1). Garza is challenging the validity of an administrative regulation under Section 1226, not a final removal order. The BIA lacks the authority to rule on the issue Garza complains of, and therefore the exhaustion of administrative remedies in this case will not speak to or resolve the issues involved in this case. *See McCarthy*, 503 U.S. at 146–148, 112 S.Ct. 1081 (noting the situation "where an administrative agency lacks the competency to resolve the particular issue presented" as one of three broad circumstances where the interests of an individual weigh heavily against requiring administrative exhaustion). In the present situation it would be futile to require Garza to pursue administrative relief that, by its very nature, will not resolve the legal issue he complains of here. Having addressed all jurisdictional issues, the Court now turns to the merits of Garza's petition.

## ANALYSIS

### I. Federal Court Review of Administrative Regulations

■■■ When federal courts review executive action, the two-step test from *Chevron*

---

8. Counsel for the Petitioner points the court to a number of unpublished BIA decisions reaching the same result. *See, e.g., IN RE: FRANK TORSTEN HEBEL*, 2006 WL 3485693 (BIA 2006); *IN RE: ISRAEL PEREZ LEON*, 2006 WL 901332 (BIA 2006); *IN RE: HUN DAI TRANG*, 2005 WL 1396803 (BIA 2005); *IN RE: VICTOR PICON–ALVARADO*, 2004 WL 2374542 (BIA 2004); *In Re: DAVE ELIOTT JOHNSON*, 2003 WL 23508470 (BIA 2003); and *IN RE: JOSE CESARIO DE JESUS–RIVERA*, 2003 WL 23521903 (BIA 2003).

governs the analysis. Under *Chevron,* courts first ask whether "Congress has directly spoken to the precise question at issue." *Chevron USA, Inc. v. Natural Res. Def. Council, Inc.,* 467 U.S. 837, 842, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). If so, courts, as well as the agency, "must give effect to the unambiguously expressed intent of Congress." *Id.* at 842–43, 104 S.Ct. 2778. However, if the statute is ambiguous, then the second step of *Chevron* requires the court to give agency's regulation "controlling weight unless [it is] arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778; *see Household Credit Servs., Inc. v. Pfennig,* 541 U.S. 232, 124 S.Ct. 1741, 158 L.Ed.2d 450 (2004). The Supreme Court has said that "judicial deference to the Executive Branch is especially appropriate in the immigration context where officials 'exercise especially sensitive political functions that implicate questions of foreign relations.'" *INS v. Aguirre–Aguirre,* 526 U.S. 415, 425, 119 S.Ct. 1439, 143 L.Ed.2d 590 (1999) (quoting *INS v. Abudu,* 485 U.S. 94, 110, 108 S.Ct. 904, 99 L.Ed.2d 90 (1988)). However, the judiciary is the final authority on issues of constitutionality and statutory construction and must reject administrative constructions that violate the constitution or are contrary to clear congressional intent.

### a. The Statute does not speak to the precise question at issue.

Section 1226(c) provides that the Attorney General "shall take into custody any alien who" is inadmissible or deportable by reason of having committed certain criminal offenses listed in sub-sections (1)(A)-(D). The language of the statute does not speak to whether an alien has a right to a hearing to demonstrate he is not properly included in a mandatory detention category.

When the language of the statute itself is silent tools of statutory construction, such as an examination of legislative history, are commonly employed in step one of the *Chevron* analysis. *See, e.g., Gen. Dynamics Land Sys., Inc. v. Cline,* 540 U.S. 581, 583, 124 S.Ct. 1236, 157 L.Ed.2d 1094 (2004) (noting that a court should only employ the deference from *Chevron* step-two when the "devices of judicial construction have been tried and found to yield no clear sense of congressional intent."). In *Kim,* the Supreme Court undertook a lengthy examination of the legislative history of Section 1226(c). The Court found that Section 1226(c) was enacted "against a backdrop of wholesale failure by the INS to deal with increasing rates of criminal activity by aliens." *Kim,* 538 U.S. at 518, 123 S.Ct. 1708. The court noted studies presented to Congress during the making of the statute that suggested detention of criminal aliens during removal proceedings might be the best way to ensure their successful removal from this country. *Id.* at 521, 123 S.Ct. 1708. It was following such reports that Congress enacted Section 1226(c), "requiring the Attorney General to detain a subset of deportable criminal aliens pending determination of their removability." *Id.*

█ This statutory history makes clear that Congress' intent was to detain certain criminal aliens pending the finality of their removal proceedings. Based on the Supreme Court's interpretation of Section 1226(c) in *Kim* and the history of the statute, it is plausible to infer that Congress did not intend to mandatorily detain aliens not properly designated criminal aliens. However, while it is doubtful that Congress intended to deprive aliens charged with removability as arriving aliens the right to procedural safeguards to ensure they are properly covered by

Section 1226(c), the statute and its legislative history do not directly speak to this matter. Therefore, it is necessary to move to the second step of the *Chevron* analysis.

### b. The Regulation is Arbitrary, Capricious and Contradictory to the Statute.

If the statutory terms are ambiguous or when Congress leaves a gap for the agency to fill, then the principle of *Chevron* deference to the Attorney General's choice must apply. *I.N.S. v. Cardoza–Fonseca,* 480 U.S. 421, 448, 107 S.Ct. 1207, 94 L.Ed.2d 434 (1987). This Court asks only whether the regulation is "arbitrary, capricious, or manifestly contrary to the statute." *Chevron,* 467 U.S. at 843–44, 104 S.Ct. 2778. Because Congress has not spoken directly to this issue, the question for this Court is whether the regulation at hand is based on a permissible construction of the statute.

In *Kim* the Supreme Court acknowledged that Section 1226(c) includes a right to a hearing to determine whether an alien was properly included within the mandatory detention category and noted that this hearing provides some level of "individualized review" sufficient to pass constitutional muster in the immigration context. *See Demore v. Kim,* 538 U.S. at 514, 522–23, 123 S.Ct. 1708 (noting that Petitioner conceded that he was properly included in the class of alien subject to mandatory detention and that in so conceding he "forwent a hearing at which he would have been entitled to present any non-frivolous argument available to demonstrate he was not prop-

erly included in the mandatory detention category"). The Majority highlighted the availability of a *"Joseph* hearing"[9] as a procedural safeguard that ensures due process to all detainees who claim they are not covered by 1226(c) and chastised Justice Souter's argument in his dissent that the statute failed due process scrutiny because it did not provide "individualized" review. *See Kim,* 538 U.S. 510, 514 n. 3, 123 S.Ct. 1708, 155 L.Ed.2d 724 (citing Justice Souter's dissent, 538 U.S. 510, 555–57, 123 S.Ct. 1708, 155 L.Ed.2d 724 (Souter, J., dissenting)).

In noting the availability of such a hearing, the *Kim* court cited *Matter of Joseph*[10] and 8 C.F.R. § 3.19(h)(2)(ii), the predecessor regulation to 8 C.F.R. § 1003.19(h)(2)(ii). However, the regulation cited in *Kim* as giving this procedural right to a hearing to "a detainee who claims he is not covered by 1226(c)," does not give such a right to all detainees covered by Section 1226(c). *Kim,* 538 U.S. 510, 514 n. 3, 123 S.Ct. 1708, 155 L.Ed.2d 724. Notably those designated as arriving aliens lack such a right under the Regulation. *See* 8 C.F.R. § 1003.19(h)(2)(ii) (not listing "arriving aliens in removal proceedings," paragraph (h)(2)(i)(B), among the categories of aliens who have the right to such a hearing). However, three other categories of aliens listed in the regulation are given the right seek a determination by an IJ that they are not properly included within regulation that strips an Immigration Judge's authority to re-determine conditions of custody. *See* 8 C.F.R.

---

9. A *Joseph* hearing is a hearing to determine whether an alien is properly included within one of the regulatory provisions that would deprive the Immigration Judge of jurisdiction to re-determine custody conditions. *See In re Samuel Joseph,* 22 I & N Dec. 799, 1999 WL 339053 (BIA 1999). In this decision the Board was interpreting the same regulation we now address. However, the alien involved

was one removable for an aggravated felony conviction, which is a category listed in 8 C.F.R. § 1003.19(2)(ii), and therefore the alien was entitled to a hearing under the Regulation.

10. 22 I & N Dec. 799, 1999 WL 339053 (BIA 1999).

§ 1003.19(h)(2)(ii) (noting that nothing in the jurisdiction stripping paragraph shall be construed as prohibiting an alien described in paragraphs (h)(2)(i)(C), (D), and (E) from seeking a determination by an Immigration Judge that the alien is not properly included within the regulation).

The absence of paragraph (h)(2)(ii)(B), arriving aliens in removal proceedings, from the sub-section that allows a so-called *"Joseph* Hearing" is nonsensical. The government has not presented any plausible reason for leaving this type of alien out of the Regulation that allows for a *Joseph* hearing, and this Court cannot find any possible legal or policy reason for the exclusion. The Supreme Court assumed in *Kim* that Section 1226(c) includes such a right, and the Attorney General has attempted to codify this right through regulation. However, the procedures created by the Attorney General through this regulation arbitrarily deprive those designated "arriving aliens" of the basic and important right to be heard.

It is clear from *Kim* that Congress may constitutionally provide for mandatory detention without bond for certain classes of criminal aliens it has determined are inherently dangerous and at risk of flight. However, as the Court in *Kim* seems to assume, Congress' authority to do so depends on observance of basic due process rights, such an accused's right to contest whether he is in fact part of the group covered by the statute. This idea is as basic as an identity hearing or a probable cause examination in our system of justice.

Garza was designated as an "arriving alien" on his initial NTA, prepared at the time he was detained on December 7, 2004. Brad Little, a CBP officer at the bridge where Garza was arrested on the outstanding AWOL charge, literally checked a box entitled "you are an arriving alien." Because of this designation, ICE's subsequent filing of a charge of removability based on crime of moral turpitude, and the regulation that strips an Immigration Judge's authority to determine whether this designation was correct, a lawful permanent resident has been detained without bond and without opportunity to seek a determination that he is not an arriving alien for five months. Because of this regulation, he remains detained without a hearing, despite the fact that he won on the merits of his removal proceeding, because as long as he is designated as an "arriving alien," and therefore subject to mandatory detention, he cannot be released until the decision on the merits is final and all appeals are exhausted.

Situations like the current one, where a CBP officer essentially has unreviewable discretion, exist because of the Attorney General's arbitrary failure to include arriving aliens in removal proceedings within the list of aliens in other mandatory detention categories who have the right under 8 C.F.R. § 1003.19(h)(2)(ii) to seek a determination that they are not properly within the listed category. Unchecked power is not something our laws allow, for it could lead to the creation of a rogue department unbridled by constitutional checks and balances.[11] This Court can see no reason or

---

11. We note serious constitutional questions with a regulation that allows the immigration enforcement agencies to escape any sort of constitutional restrictions. Because the regulation is invalid under *Chevron,* we do not here undergo a full due process analysis. Violations of substantive due process occur when the government interferes with rights

"implicit in the concept of ordered liberty." *Palko v. Connecticut,* 302 U.S. 319, 325–26, 58 S.Ct. 149, 82 L.Ed. 288 (1937). Further, procedural due process requires that the government must implement restrictions on liberty fairly. *See Mathews v. Eldridge,* 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). Analyzing violations of substantive and proce-

explanation for leaving out arriving aliens from the categories of aliens who have the simple right to seek a determination of whether they are in fact subject to the provisions of the regulation. The regulation is nothing other than arbitrary.

We note that federal law necessarily commits all matters of policy making to the political branches, and that because of this the executive has wide latitude in matters of immigration policy and enforcement. This court gives great weight to the wisdom of immigration officials, who exercise especially sensitive political functions that implicate questions of foreign relations. However, the courts are the final arbiters of the laws and the Constitution, and must reject administrative constructions that run afoul of established legal principles.

Section 1226(c) can not allow for such unreviewable discretion if it is to continue to be constitutional. Because the Court understands that Congress' intent is always to uphold the constitution, this regulation is invalid under Section 1226(c). It fails the second step of the *Chevron* analysis because it is "arbitrary, capricious, and manifestly contrary to the statute." *Chevron*, 467 U.S. at 843–44, 104 S.Ct. 2778.

## CONCLUSION AND ORDER

The Court holds that 8 C.F.R. § 1003.19(h)(2)(ii) is an invalid exercise of executive power because it is arbitrary and inconsistent with 8 U.S.C. § 1226(c). Accordingly, to the extent that the government is still pursuing administrative remedies and the IJ's order terminating proceedings is still not final, we ORDER the immigration judge to conduct a *Joseph* hearing to determine whether or not Garza is properly designated an arriving

alien subject to mandatory detention during the pendency of his removal proceedings. If the Immigration Judge finds Garza is improperly designated, he will then be eligible for release in accordance with the general bond provisions and based on the Immigration Judge's discretion. If DHS is not continuing to pursue administrative remedies, we ORDER that ICE release Petitioner Juan Jose Garza–Garcia immediately, pursuant to the decision of the IJ and the BIA that he is not removable.

---

dural due process involves separate legal tests. However, this Court does not here un-

dertake these analyses, because it would be unnecessary to do so.