**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-3241
_____

GARFIELD O. GAYLE; NEVILLE SUKHU,
Appellants

v.

WARDEN MONMOUTH COUNTY CORRECTIONAL
INSTITUTION;SECRETARY UNITED STATES
DEPARTMENT OF HOMELAND SECURITY;
ATTORNEY GENERAL OF THE UNITED STATES OF
AMERICA;DIRECTOR OF IMMIGRATION AND
CUSTOMS ENFORCEMENT;DIRECTOR OF THE
EXECUTIVE OFFICE OF IMMIGRATION
REVIEW;JOHN TSOUKARIS, in his official capacity as
Field Office Director for Enforcement and Removal
Operations, Newark Field Office of U.S. Immigration and
Customs Enforcement; THOMAS DECKER, in his official
capacity as the Field Office Director for Enforcement and
Removal Operations, New York City Field Office of U.S.
Immigration and Customs Enforcement; WARDEN
BERGEN COUNTY JAIL; WARDEN ELIZABETH
COUNTY DETENTION CENTER; WARDEN ESSEX
COUNTY CORRECTIONAL FACILITY; DIRECTOR

DELANEY HALL DETENTION FACILITY; DIRECTOR
HUDSON COUNTY CORRECTIONAL FACILITY

_____

On Appeal from the District Court for the
District of New Jersey
(D.C. No. 3-12-cv-02806)
District Judge:  Hon. Freda L. Wolfson, Chief Judge

_____

Argued January 12, 2021

Before: AMBRO, KRAUSE, and PHIPPS, *Circuit Judges*

(Opinion Filed: September 3, 2021)

Lawrence S. Lustberg          **[ARGUED]**
Michael R. Noveck
Gibbons
One Gateway Center
Newark, NJ 07102

   *Counsel for Appellants*

Stefanie N. Hennes
Craig W. Kuhn
Dhruman Y. Sampat          **[ARGUED]**
United States Department of Justice
Office of Immigration Litigation
P.O. Box 868

2

Ben Franklin Station
Washington, DC 20044

*Counsel for Appellees*

_____

OPINION OF THE COURT

_____

KRAUSE, *Circuit Judge.*

Under 8 U.S.C. § 1226(c), the Government must detain noncitizens who are removable because they committed certain specified offenses or have connections with terrorism, and it must hold them without bond pending their removal proceedings. This appeal asks us to decide what process is due when such detainees contend that they are not properly included within § 1226(c) and whether noncitizens who have substantial defenses to removal on the merits may be detained under § 1226(c). Because the District Court granted relief in the form of a class-wide injunction, we must also decide whether 8 U.S.C. § 1252(f)(1) permits class-wide injunctive relief.

For the reasons set forth below, we agree with the District Court that § 1226(c) is constitutional even as applied to noncitizens who have substantial defenses to removal. But for those detainees who contend that they are not properly included within § 1226(c) and are therefore entitled to a hearing pursuant to *In re Joseph*, 22 I. & N. Dec. 799 (BIA 1999), we hold that the Government has the burden to establish the applicability of § 1226(c) by a preponderance of the

3

evidence and that the Government must make available a contemporaneous record of the hearing, consisting of an audio recording, a transcript, or their functional equivalent. Because we also conclude that § 1252(f)(1) does not authorize class-wide injunctions, we will reverse the District Court's order in part, affirm in part, and remand for the entry of appropriate relief.

## I.        Factual & Procedural Background

This case returns to us following our 2016 remand to the District Court to consider class certification. *See Gayle v. Warden Monmouth Cnty. Corr. Inst.*, 838 F.3d 297 (3d Cir. 2016). Because our prior opinion related the history of the case to that point in detail, *see id.* at 300–02, we will recount it only briefly here.

In 2012, Garfield Gayle and Neville Sukhu filed a habeas petition on behalf of a putative class of noncitizens who are detained under § 1226(c) in the District of New Jersey.[1] Contending that it violates due process to mandatorily detain noncitizens who have substantial defenses to removal and that the procedure for conducting *Joseph* hearings is constitutionally inadequate, they sought declaratory and injunctive relief on behalf of the putative class.

In 2015, the District Court granted partial summary judgment in favor of Gayle and Sukhu individually and then denied their class certification motion as moot. *Gayle v.*

---

[1] A third named plaintiff, Sheldon Francois, is no longer a party in this matter.

4

*Johnson*, 81 F. Supp. 3d 371, 402–03 (D.N.J. 2015). On appeal, however, we determined that because Gayle and Sukhu themselves had been released from detention before the District Court granted relief, it was their individual claims that were moot. *Gayle*, 838 F.3d at 300. That meant the District Court lacked jurisdiction to rule on the merits of those individual claims but retained jurisdiction over the class certification motion that was filed while the named plaintiffs were still in custody. *Id.* at 303–04. We therefore remanded for the District Court to determine if the purported class should be certified and, if so, to address the class claims. *Id.* at 312–13.

On remand, the parties engaged in limited discovery regarding class certification, and the District Court certified a class consisting of:

> all persons within the District of New Jersey, now and in the future, who are mandatorily detained pursuant to 8 U.S.C. § 1226(c) [and who seek] to obtain a bond hearing on the basis of a substantial claim to relief that would prevent the entry of a removal order, which includes challenging the constitutionality of the *Joseph* hearing process, namely, the allocation of the burden of proof and the contemporaneous recording of the hearing.

*Gayle v. Warden Monmouth Cnty. Corr. Inst.*, No. 12-cv-02806, 2017 WL 5479701, at *1 (D.N.J. Nov. 15, 2017).

The parties subsequently filed cross-motions for summary judgment. The record developed in those proceedings highlights what is at stake for the plaintiff class (hereinafter "Plaintiffs"). As of 2017, there were nearly 1,200 detainees in New Jersey held under § 1226(c), at least 20% of whom were Lawful Permanent Residents (LPRs). JA 308, 318, 442. Among cases that concluded in 2017, the average time of detention was 300 days, with a median of 224 days, and some § 1226(c) detainees were held for more than a year. JA 308, 318, 442–43. In addition, of those cases in New Jersey that concluded in 2017, 41% of § 1226(c) detainees raised a defense to removal—either by challenging the Government's removal charge or by applying for discretionary relief—and 55% of those detainees ultimately prevailed. JA 308, 318.

After considering this record, the District Court granted summary judgment to the Government in part and to the Plaintiffs in part. *Gayle v. Warden Monmouth Cnty. Corr. Inst.*, No. 12-cv-2806, 2019 WL 4165310, at *2 (D.N.J. Sept. 3, 2019). It ruled that § 1226(c) may apply to noncitizens who have substantial defenses to removal on the merits without violating due process and that the Government need not make a contemporaneous record of *Joseph* hearings. *Id.* at *12, *24. But it agreed with the Plaintiffs that the standard of proof currently applied at *Joseph* hearings is "virtually undefined" and places too much risk of error on § 1226(c) detainees. *Id.* at *19. Thus, even though the Government took the position that *Joseph* requires it to make an initial showing of "probable cause" to believe a detainee committed a relevant offense under § 1226(c), *id.* at *19, the District Court "issue[d] a class-wide injunction that directs the Government to establish [at the *Joseph* hearing] that there is probable cause to find that a detained alien under § 1226(c) falls under the statute's

6

mandatory detention requirements," *id.* at *2. It thereby rejected the Plaintiffs' contentions that probable cause is too low a standard and that noncitizens may not be subjected to § 1226(c) detention if they raise "substantial challenges to entry of a final removal order." Appellants' Br. 5.

With the District Court having denied their due process claims concerning the standard of proof at *Joseph* hearings, the applicability of § 1226(c) to detainees with substantial defenses to removal, and the requirement for a contemporaneous record of *Joseph* hearings, the Plaintiffs appealed.[2]

## II.     Jurisdiction & Standard of Review

The District Court had jurisdiction under 28 U.S.C. § 1331, and we have jurisdiction under 28 U.S.C. § 1291. Although the named plaintiffs' individual claims "were long ago moot," *Gayle*, 838 F.3d at 302–03, the certified class has standing to litigate its claims and the named plaintiffs may continue to represent the class so long as they meet the requirements of Rule 23, which the District Court found they did, *see Gayle*, 2017 WL 5479701, at *19; *Holmes v. Pension Plan of Bethlehem Steel Corp.*, 213 F.3d 124, 135–36 (3d Cir. 2000).

We review the District Court's summary judgment decision de novo. *Cranbury Brick Yard, LLC v. United States*, 943 F.3d 701, 708 (3d Cir. 2019).

---

[2] The Government initially cross-appealed as well, but it subsequently withdrew that appeal.

### III. Discussion

In 1996, during a comprehensive revision of the immigration laws, Congress enacted § 1226(c), which requires the Government to detain noncitizens who are removable on the basis of certain crimes or connections with terrorism and to hold them without bond until their removal proceedings. *See Nielsen v. Preap*, 139 S. Ct. 954, 959 (2019); *Demore v. Kim*, 538 U.S. 510, 517–18 (2003). Under *Joseph*, such detainees are entitled to a hearing before an Immigration Judge (IJ) to determine "whether the [Government] has properly included [them] within a category that is subject to mandatory detention" under § 1226(c). 22 I. & N. Dec. at 805; 8 C.F.R. § 1003.19(h)(2)(i)(D), (h)(2)(ii). If a detainee is found not to be "properly included" within § 1226(c), she may then seek release on bond under 8 U.S.C. § 1226(a).[3] *Joseph*, 22 I. & N. Dec. at 806.

---

[3] With narrow exceptions, § 1226(c) provides:

The Attorney General *shall* take into custody any alien who—
> **(A)** is inadmissible by reason of having committed any offense covered in section 1182(a)(2) of this title,
> **(B)** is deportable by reason of having committed any offense covered in section 1227(a)(2)(A)(ii), (A)(iii), (B), (C), or (D) of this title,
> **(C)** is deportable under section 1227(a)(2)(A)(i) of this title on the basis of an offense for which

Plaintiffs challenge § 1226(c) detention and the *Joseph* hearing framework on three grounds: (A) that it violates due process to apply § 1226(c) to noncitizens who have substantial defenses to removal; (B) that the Government at *Joseph* hearings must establish the applicability of § 1226(c) by a standard greater than "probable cause"; and (C) that due process requires the Government to make a contemporaneous verbatim record of *Joseph* hearings. Defending the form of relief entered by the District Court, Plaintiffs also argue (D) that § 1252(f)(1) authorizes district courts to enter class-wide injunctions. We address these issues in turn.

---

the alien has been sentence[d] to a term of imprisonment of at least 1 year, or

**(D)** is inadmissible under section 1182(a)(3)(B) of this title or deportable under section 1227(a)(4)(B) of this title . . . .

8 U.S.C. § 1226(c)(1) (emphasis added).

For its part, § 1226(a) provides, as relevant here, that "[o]n a warrant issued by the Attorney General, an alien *may* be arrested and detained pending a decision on whether the alien is to be removed from the United States" and that "[e]xcept as provided in subsection (c) and pending such decision, the Attorney General . . . may release the alien on . . . bond." 8 U.S.C. § 1226(a)(1)–(2) (emphasis added).

## A. The constitutionality of § 1226(c) as applied to noncitizens with substantial defenses to removal

Plaintiffs first argue that § 1226(c) is unconstitutional to the extent it requires detention without bond for those noncitizens who have "a substantial defense to entry of a removal order," Appellants' Br. 22–23—whether the defense be a claim for discretionary relief, such as cancellation of removal or adjustment of status, 8 U.S.C. §§ 1229b(a), (b)(1), 1255, or that the noncitizens is not deportable or is not inadmissible, for example, because she did not commit a removable offense, *see* 8 U.S.C. §§ 1227, 1182. Plaintiffs derive their "substantial defense" approach from the context of bail pending appeal, where a defendant may be released if she "raises a substantial question of law or fact likely to result" in her prevailing, 18 U.S.C. § 3143(b)(1)(B), and where a "substantial question" is defined as one that is "fairly debatable" by "'jurists of reason,'" *United States v. Smith*, 793 F.2d 85, 88–89 (3d Cir. 1986) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). So, Plaintiffs posit, if a detainee raises one of these defenses to removal[4] and the merits are

---

[4] To the extent Plaintiffs are arguing that mandatory detention is impermissible for noncitizens who claim they did not commit "one of the [removal offenses] specified in [§] 1226(c)," Appellants' Br. 21, Plaintiffs challenge not the constitutionality of § 1226(c) as applied to those with substantial defenses to removal, but rather the adequacy of the process by which detainees may contest whether they are "properly included" within § 1226(c), *i.e.*, the *Joseph* hearing, *see Joseph*, 22 I. & N. Dec. at 805. We address that issue in the next section.

10

fairly debatable, that detainee cannot constitutionally be subjected to mandatory detention under § 1226(c).

As we read the case law, however, that argument, has been foreclosed by the Supreme Court. In *Demore v. Kim*, the Court assessed the constitutionality of mandatory detention under § 1226(c) against the due process test from *Zadvydas v. Davis*, 533 U.S. 678 (2001), which requires that immigration detention "bear[] a reasonable relation to the purpose for which the individual was committed," *Demore*, 538 U.S. at 527 (quoting *Zadvydas*, 533 U.S. at 690). It concluded that § 1226(c) passes muster under that standard, explaining that the "detention of deportable criminal aliens *pending their removal proceedings*" advances Congress's goal of "preventing deportable criminal aliens from fleeing prior to or during their removal proceedings" and thus "increas[es] the chance that, *if ordered removed*, the aliens will be successfully removed." *Id.* at 527–28 (second emphasis added). By its terms, this reasoning reflects that the Court understood § 1226(c) to cover even those noncitizens who are ultimately successful in opposing removal.

Plaintiffs try to distinguish *Demore* on two grounds, neither of which is persuasive. First, they say that because the detainee in *Demore* did not "argue that he himself was not 'deportable' within the meaning of § 1226(c)," *id.* at 522 & n.6, we should follow dicta from the Seventh Circuit and treat *Demore* as "le[aving] open the question whether mandatory detention under § 1226(c) is consistent with due process when a detainee makes a colorable claim that he is not in fact deportable," *Gonzalez v. O'Connell*, 355 F.3d 1010, 1019–20 (7th Cir. 2004). But the Supreme Court in *Demore* expressly noted that the detainee there "did not concede that he *will*

11

*ultimately be deported*" because he had "applied for withholding of removal." 538 U.S. at 522 n.6.

Second, Plaintiffs argue that § 1226(c) detention does not "bear[] a reasonable relation" to Congress's goal of "preventing deportable criminal aliens from fleeing," *id.* at 527–28, when the noncitizen has a substantial defense to removal because such individuals are less likely to abscond. But any lower likelihood of flight is conjectural, and even if we accept Plaintiffs' proposition, they do not explain why mandatory detention would not bear a "reasonable relation" to a lesser but still extant likelihood of flight. *Id.* at 527. *Demore*'s rationale—that § 1226(c) detention is permissible because it "increas[es] the chance that, *if ordered removed*, the aliens will be successfully removed," *id.* at 528 (emphasis added)—therefore governs this case.

Were there any doubt, the Supreme Court has observed in the years since *Demore* both that § 1226(c) requires the Government to "detain an alien until 'a decision on *whether* the alien is to be removed' is made," *Jennings v. Rodriguez*, 138 S. Ct. 830, 847 (2018) (quoting 8 U.S.C. § 1226(a)), and that it mandates that such noncitizens "be detained without a bond hearing *until the question of their removal is resolved*," *Preap*, 139 S. Ct. at 959 (emphasis added).

In sum, the mandatory detention of a noncitizen does not offend the Due Process Clause—even where she has a substantial and ultimately successful defense to removal—so long as she falls within the scope of § 1226(c) "by reason of

12

having committed any of the [specified] offenses."[5]  *See Demore*, 538 U.S. at 527–28.

## B. The burden and standard of proof at *Joseph* hearings

We next examine the process that is due at the hearing before an IJ to determine whether a detainee is "properly included" within the scope of § 1226(c), *i.e.*, the *Joseph* hearing. *Joseph*, 22 I. & N. Dec. at 805. Because the detainee in *Demore* did not take advantage of the opportunity for a *Joseph* hearing, the Supreme Court there "ha[d] no occasion to review the adequacy of *Joseph* hearings generally in screening out those who are improperly detained pursuant to § 1226(c)." *Id.* at 514 n.3. As Justice Kennedy observed, however, "due process requires individualized procedures to ensure there is at least some merit to the [Government's] charge" that a noncitizen is subject to mandatory detention under § 1226(c),

---

[5] Although Plaintiffs press the point, we have no occasion to consider the canon of constitutional avoidance both because the text of the statute is unambiguous, *see Jennings*, 138 S. Ct. at 846 ("[Section] 1226(c) makes clear that detention of aliens within its scope *must* continue 'pending a decision on whether the alien is to be removed from the United States.'" (quoting 8 U.S.C. § 1226(a))), and because we find no constitutional problem with § 1226(c) under *Demore*'s rationale, *cf. id.* at 842 ("When a serious doubt is raised about the constitutionality of an act of Congress, it is a cardinal principle that this Court will first ascertain whether a construction of the statute is fairly possible by which the question may be avoided." (citation and internal quotation marks omitted)).

*id.* at 531 (Kennedy, J., concurring), and for the reasons set forth below, we are persuaded that the *Joseph* hearing framework does not provide this surety.

Under *Joseph*, the Government must establish merely that there is "reason to believe" a detainee is properly included within § 1226(c), at which point the burden shifts to the detainee to show that the Government is "substantially unlikely to prevail on its charge" at the eventual removal hearing. *Joseph*, 22 I. & N. Dec. at 807. A detainee can make that showing with either factual or legal arguments, but her burden is a heavy one: Her legal arguments, for example, may only succeed if she presents "precedent caselaw directly on point that mandates a finding that the charge of removability will not be sustained." *In re Garcia*, 2007 WL 4699861, at *1 (BIA Nov. 5, 2007) (unpublished).[6]

---

[6] The BIA has explained that even where "[t]he respondent's brief on appeal raises serious questions concerning whether the respondent's offense is appropriately categorized as a crime involving moral turpitude" because the detainee raised a precedential circuit court decision interpreting an analogous crime, such "serious questions" do not meet the "substantially unlikely" standard at the *Joseph* hearing stage. *In re Zamoripa-Tapia*, 2010 WL 2390763, at *1 (BIA May 21, 2010) (unpublished) (citing *Navarro-Lopez v. Gonzalez*, 503 F.3d 1063 (9th Cir. 2007)). And although unpublished BIA decisions such as *Garcia* and *Zamoripa-Tapia* "do not bind the BIA" in future cases, *see De Leon-Ochoa v. Att'y Gen.*, 622 F.3d 341, 348–51 (3d Cir. 2010), they

14

According to the Government and the District Court, so long as "reason to believe" equates to "probable cause," this framework satisfies due process because the *Joseph* hearing is only preliminary and "[t]o impose a higher burden on the Government . . . would severely undermine the purposes of [§ 1226(c)]."[7] *Gayle*, 2019 WL 4165310, at *21. According to Plaintiffs, however, a probable cause standard incorrectly "allocate[s] the risk of error." *Addington v. Texas*, 441 U.S. 418, 423 (1979). Instead, they argue, once again, that due process requires applying the standard used for bail pending appeal, where a defendant may be released if she "raises a

---

illustrate how, in practice, the BIA has applied *Joseph* to "those parties for whom [those decisions were] rendered," *id.* at 350.

[7] In practice, the "reason to believe" standard has produced significant confusion. Indeed, the District Court issued its class-wide injunction requiring the Government to meet a "probable cause" standard precisely because it found "reason to believe" to be "virtually undefined" and "inconsisten[tly]" applied. *Gayle*, 2019 WL 4165310, at *18–*19. Although it is "often equated with mere probable cause," *In re Lopez-Cornejo*, 2011 WL 585622, at *2 (BIA Jan. 31, 2011) (unpublished), and the Government here agrees that "reason to believe" is the same as "probable cause," *see Gayle*, 2019 WL 4165310, at *19; Appellees' Br. 12, it is susceptible to being viewed as a standard of proof distinct from, and lower than, "probable cause," *see* Amy Greer, *Giving* Joseph *Hearings Their Due: How to Ensure that* Joseph *Hearings Pass Due Process Muster*, 26 ROGER WILLIAMS U. L. REV. 40, 65–68 (2021).

substantial question of law or fact likely to result" in her prevailing. 18 U.S.C. § 3143(b)(1)(B). Adopting that framework for *Joseph* hearings would mean that a detainee would be subject to the ordinary bail standards of § 1226(a) whenever there is a "substantial question" whether she is properly included within § 1226(c). Appellants' Br. 31–32.[8] At a minimum, however, Plaintiffs urge us to hold that the Government must make an initial showing by a "preponderance" of the evidence that the detainee is properly included within § 1226(c). Tr. 11–12.

To determine the proper burden and standard of proof, we "engage[] in a straight-forward consideration of the [due process] factors identified in [*Mathews v.*] *Eldridge*." *Santosky v. Kramer*, 455 U.S. 745, 754 (1982). We balance (1) "the private interest that will be affected by the official action"; (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards"; and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). "The function of a standard of proof," the Supreme Court has explained, "is to instruct the factfinder concerning the degree of confidence our society thinks he should have in the correctness" of the

---

[8] This approach is not without support: Justice Breyer advocated a substantial question standard for *Joseph* hearings in his dissent in *Demore*, *see* 538 U.S. at 578 (Breyer, J., dissenting), as did Judge Tashima in his concurrence in *Tijani v. Willis*, 430 F.3d 1241, 1247 (9th Cir. 2005) (Tashima, J., concurring).

decision, so it "serves to allocate the risk of error between the litigants." *Addington*, 441 U.S. at 423 (citation and internal quotation marks omitted).

Applying the *Mathews* test, we conclude that the Government bears the burden of proof at *Joseph* hearings and that it must establish that a detainee is properly included within § 1226(c) by a preponderance of the evidence. We reach this conclusion for three reasons.

First, the loss of liberty for § 1226(c) detainees is a particularly weighty interest, *see Zadvydas*, 533 U.S. at 690; *cf. B.C. v. Att'y Gen.*, — F.4th — , No. 19-1408, 2021 WL 3891557, at *6 (3d Cir. Sept. 1, 2021), and when such a severe deprivation is at issue, the Government must bear the burden of proof, *see German Santos v. Warden Pike Cnty. Corr. Facility*, 965 F.3d 203, 214 (3d Cir. 2020); *see also Addington*, 441 U.S. at 431–33 (requiring the Government to show clear and convincing evidence of mental illness before imposing civil commitment); *Foucha v. Louisiana*, 504 U.S. 71, 80 (1992) ("The State may also confine a mentally ill person if it shows by clear and convincing evidence that the individual is mentally ill and dangerous." (citation and internal quotation marks omitted)).

The *Joseph* framework, however, effectively shifts the entire burden of proof onto the detainee. Even though *Joseph* encouraged IJs to engage in "more than just a perfunctory review and ratification of the fact that the [Government] may have had a 'reason to believe' the respondent was [within the category of § 1226(c)]," 22 I. & N. Dec. at 804–05, the low threshold it imposes and its burden-shifting paradigm mean, in

17

practice, that the detainee must disprove § 1226(c)'s applicability. It is no surprise then that the BIA itself has sometimes acknowledged that under *Joseph*, "the burden of proof is upon the respondent to establish that he is not properly included" within § 1226(c). *In re Garcia*, 2007 WL 4699861, at *1 (BIA Nov. 5, 2007) (unpublished).

Second, the "probable cause" standard advocated by the Government is too low a bar given the interests at stake. Probable cause is less than a preponderance, *see Illinois v. Gates*, 462 U.S. 213, 235 (1983); *Gerstein v. Pugh*, 420 U.S. 103, 121 (1975); *United States v. Ortiz*, 669 F.3d 439, 444–45 (4th Cir. 2012), and although it must be based on "more than bare suspicion," *Brinegar v. United States*, 338 U.S. 160, 175 (1949), a "reasonable ground for belief" will suffice, *id.* (citation and internal quotation marks omitted), and it "does not demand any showing that [the] belief [in question is] correct or more likely true than false," *Texas v. Brown*, 460 U.S. 730, 742 (1983). Thus, under that standard, a noncitizen may be deemed to fall within § 1226(c) simply if "a man of reasonable caution" could "belie[ve]" that the noncitizen committed a relevant offense, even if that belief appears more likely false than true. *Id.* (citation and internal quotation marks omitted).

But the deprivation for § 1226(c) detainees is not only severe in nature, *see Zadvydas*, 533 U.S. at 690; it is also substantial in duration. If a noncitizen is found to fall within § 1226(c), she may not seek release on bond unless and until her detention has become "unreasonably long," which, under our precedents, may be six months or more. *German Santos*, 965 F.3d at 210–11. The class representatives here, for example, were held for nearly a year and for nearly two years,

respectively, and § 1226(c) detainees in New Jersey are held for an average of 300 days and a median of 224. Detention of that length without the opportunity to seek release on bond must be based on more than just "a reasonable ground for belief." *Brinegar*, 338 U.S. at 175 (citation and internal quotation marks omitted).

Indeed, while suspected parole violators may be detained pending a final parole revocation hearing on a finding of mere probable cause, *see Morrissey v. Brewer*, 408 U.S. 471, 487 (1972), they have a diminished liberty interest compared with § 1226(c) detainees, because parole "[r]evocation deprives an individual, not of the absolute liberty to which every citizen is entitled, but only of the conditional liberty properly dependent on the observance of special parole restrictions," *id.* at 480; *see Zadvydas*, 533 U.S. at 690. Likewise, in the context of bail pending trial, *see generally United States v. Salerno*, 481 U.S. 739, 747 (1987), although a rebuttable presumption of dangerousness or flight risk arises if a judge finds "probable cause to believe that the [defendant] committed" certain specified offenses, 18 U.S.C. § 3142(e)(3), *see United States v. Perry*, 788 F.2d 100, 113–15 (3d Cir. 1986), the presumption of dangerousness or flight risk under § 1226(c) is in effect irrebuttable once a detainee is found to be "properly included" within that provision, *Joseph*, 22 I. & N. Dec. at 805. Compared to those two guideposts, we conclude that the Government must meet a higher standard than probable cause here.

Third, while the "probable cause" standard places too little risk on the Government, Plaintiffs' proposed standard places too much. Under Plaintiffs' proposed framework, borrowed from the context of bail pending appeal, raising a

19

"substantial question" about the applicability of § 1226(c) would defeat the Government's showing and allow the detainee to seek bond under § 1226(a). Reply Br. 9. But, as we have explained, a "substantial question" is merely one that is "fairly debatable" by "'jurists of reason,'" *Smith*, 793 F.2d at 89 (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)), and given the importance of the Government's interest in "preventing deportable criminal aliens from fleeing prior to or during their removal proceedings," *Demore*, 538 U.S. at 528, that low threshold would tilt the scales too far.[9]

Having considered the standards urged by the Government and by Plaintiffs, we settle on one in between: To comport with due process, the Government must show by a preponderance of the evidence that the detainee is properly included within § 1226(c) as both a factual and a legal matter. *See Addington*, 441 U.S. at 423–24. It must show, in other words, that it is more likely than not both that the detainee in fact committed a relevant offense under § 1226(c) and that the offense falls within that provision as a matter of law. *Cf.*

---

[9] Similarly, although it is a "settled rule that when a party stands to lose his liberty, even temporarily, we hold the Government" to a "clear and convincing evidence" standard in the context of civil detention, *German Santos*, 965 F.3d at 213–14, requiring the Government to make an initial showing of clear and convincing evidence that a detainee is properly included within § 1226(c) would be too high a bar at the *Joseph* hearing because it would effectively duplicate the burden the Government must meet at the eventual removal hearing to "establish[] by clear and convincing evidence that . . . the alien is deportable," 8 U.S.C. § 1229a(c)(3)(A); *see also Woodby v. INS*, 385 U.S. 276, 285–86 (1966).

*Joseph*, 22 I. & N. Dec. at 809 (Schmidt, Chairman, dissenting) (contending that the Government must "demonstrate[] a likelihood of success on the merits of its charge" at the *Joseph* hearing).

This approach properly places a lower burden on the Government at the *Joseph* hearing than at the removal hearing, *see supra* note 9, so it will not turn *Joseph* hearings into "mini-trials" that duplicate the eventual removal hearing by "requiring a full assessment of the merits of an individual's claims and defenses." Appellees' Br. 40. And requiring the Government to make an initial showing that a detainee likely "is inadmissible" or "is deportable" for one of the reasons specified in § 1226(c), *see* 8 U.S.C. § 1226(c)(1)(A)–(D), is consonant with other detention contexts in which we require parties to make some initial showing of likelihood of success pending final adjudication, *see, e.g.*, *Gerstein*, 420 U.S. at 114; 18 U.S.C. § 3143(b).

In sum, the Government bears burden of proof at *Joseph* hearings, and it satisfies that burden by showing that a detainee more likely than not is properly included within § 1226(c).

## C. Whether the Government must create a contemporaneous record of *Joseph* hearings

Having determined the proper burden and standard of proof at *Joseph* hearings, we turn to Plaintiffs' final argument: that due process requires a contemporaneous verbatim record of *Joseph* hearings. *Mathews* balancing again guides our analysis. Both parties agree that the first *Mathews* factor—the "private interest" in freedom from custody, *Mathews*, 424 U.S.

21

at 335—is significant, so we are left to weigh the second and third *Mathews* factors.

As for the second, the parties dispute "the risk of an erroneous deprivation," *id.*, if the Government does not make a contemporaneous verbatim record of *Joseph* hearings. Plaintiffs assert such a record is necessary to deter, detect, and correct "IJ misconduct," Appellants' Br. 47 (citation and quotation marks omitted), while the Government retorts that because *Joseph* hearings "generally turn on legal questions" and the meaning of "conviction documents," a contemporaneous verbatim record is unnecessary and the BIA can review the relevant documents and legal issues de novo, Appellees' Br. 53, 58.

Plaintiffs have the better argument. Misconduct or mistakes made by IJs are often identifiable only through audio recordings or transcripts of the proceeds. *See Serrano-Alberto v. Att'y Gen.*, 859 F.3d 208, 221 (3d Cir. 2017) (noting that "the record" from an immigration proceeding may indicate that an "IJ's conduct crosse[d] the line"). And as demonstrated by the record here, *Joseph* hearings do sometimes turn on witness testimony. Even the Government's designee, *see* Fed. R. Civ. P. 30(b)(6), Immigration Judge Robert D. Weisel, acknowledged at his deposition that detainees "will testify" at *Joseph* hearings and that such testimony "would lend itself to potentially . . . establishing" that the detainee is not properly included within § 1226(c). JA 405, 417–18. If a detainee testifies that she is not the person in the conviction records, for example, the IJ might "direct[] the government to take the fingerprints of the individual to determine identity." JA 424–25. The Government, too, Judge Weisel explained, "could

22

even produce testimony" to show that the detainee is properly included within § 1226(c).  JA 421.

Currently, however, according to the Government's Statement of Material Facts, "the only contemporaneous record" that is made of *Joseph* hearings is "generally . . . a form order with a box checked off," although IJs often "maintain contemporaneous notes of proceedings."  JA 317.  In the event a detainee appeals to the BIA, the IJ will then "prepare[] a written memorandum," which might be based on the IJ's notes and "any relevant audio recordings."  *Id.*  But in the absence of any requirement to create such notes or recordings, *id.*, the memo might be based on nothing more than an IJ's best recollection—after the fact and amid innumerable other hearings over which she presided.

Either way, such post-hoc reconstruction of the events will never be "the functional equivalent of a transcript."  *Singh v. Holder*, 638 F.3d 1196, 1200, 1208 (9th Cir. 2011) (requiring the Government to create a contemporaneous record of bond hearings for § 1226(a) detainees whose detentions have become unreasonably prolonged).  So relative to the existing state of affairs, we easily conclude that the "probable value" of "additional . . . procedural safeguards" at *Joseph* hearings is high.  *Mathews*, 424 U.S. at 335; *cf. Press-Enter. Co. v. Superior Ct. Cal., Riverside Cnty.*, 464 U.S. 501, 508, 512 (1984) (explaining that for both "the accused and the public," creation of and access to transcripts plays a crucial role in guaranteeing "the basic fairness" of proceedings and correcting "deviations" from proper procedure).

23

As to the "Government's interest," the third factor in the *Mathews* test, 424 U.S. at 335, we agree with the District Court that "the Government would bear no additional burden" if it were required to create a contemporaneous record, *Gayle*, 2019 WL 4165310, at *23, because audio recording equipment is already installed in the hearing rooms where *Joseph* hearings occur, and it is often on by default. In other words, IJs already operate that equipment during removal hearings, *see* JA 307–08, 317, and in many cases must affirmatively turn it off before a *Joseph* hearing. Allowing it to record instead would seem, if anything, to lighten the Government's load.

Given the substantial individual interest in liberty, the relatively high value of additional safeguards, and the minimal burden on the Government, *Mathews* balancing dictates that the Government make "a record [of *Joseph* hearings] of sufficient completeness" for "adequate and effective . . . appellate review." *Mayer v. City of Chicago*, 404 U.S. 189, 194 (1971) (citations and internal quotation marks omitted).[10]

---

[10] Although *Mayer* was a criminal case, "the Due Process Clause applies to . . . aliens" within the United States, *Zadvydas*, 533 U.S. at 693, and we have recognized "the importance of having an adequate record" for review in the context of agency decision-making and immigration proceedings in particular. *See Pichardo v. V.I. Comm'r Labor*, 613 F.3d 87, 101 (3d Cir. 2010); *see also Marincas v. Lewis*, 92 F.3d 195, 202–04 (3d Cir. 1996) (requiring an adequate record in asylum proceedings); *Kheireddine v. Gonzales*, 427 F.3d 80, 84 (1st Cir. 2005) ("While this case involves the failure of transcription in an immigration proceeding [not a criminal prosecution], . . . the due process principle is the

24

This requirement does not, of course, "translate automatically into a complete verbatim transcript." *Id.* Rather, "[a]lternative methods of reporting [the] proceedings are permissible" if they create "an equivalent report of the events," such as "[a] statement of facts agreed to by both sides, a full narrative statement based perhaps on the [IJ]'s minutes," or an audio recording. *Id.* at 194–95 (citations and internal quotation marks omitted). The choice among those "functional equivalent[s] of a transcript" lies with the Government, but whatever the form, "the government must make available for appeal a contemporaneous record of [*Joseph*] hearings." *Singh*, 638 F.3d at 1208–09.

### D. Whether § 1252(f)(1) permits class-wide injunctive relief

Having determined that two of Plaintiffs' constitutional arguments are meritorious, all that remains is to decide what relief may be granted under 8 U.S.C. § 1252(f)(1) and whether

---

same: due process demands a reasonably accurate, reasonably complete transcript, or an adequate substitute, to allow for meaningful and adequate appellate review." (citation and internal quotation marks omitted)). In addition, "[i]mmigration law is a field in which fair, accurate factfinding is of critical importance," *B.C. v. Att'y Gen.*, — F.4th — , No. 19-1408, 2021 WL 3891557, at *6 (3d Cir. Sept. 1, 2021) (quoting *Calderon-Rosas v. Att'y Gen.*, 957 F.3d 378, 381 (3d Cir. 2020)), and an adequate record enhances the ability to review factual claims made at *Joseph* hearings. In light of those principles, we conclude that *Mayer*'s requirement of "a record of sufficient completeness," 404 U.S. at 194 (citation omitted), extends to *Joseph* hearings as well.

the District Court erred by "issu[ing] a class-wide injunction" setting the standard of proof for *Joseph* hearings. *Gayle*, 2019 WL 4165310, at \*2.

Section 1252(f)(1) provides that "no court (other than the Supreme Court) shall have jurisdiction or authority to enjoin or restrain the operation of [8 U.S.C. §§ 1221–1232], other than with respect to the application of such provisions to an individual alien against whom proceedings under such part have been initiated." We have previously held that § 1252(f)(1) "permit[s] class declaratory relief." *Alli v. Decker*, 650 F.3d 1007, 1016 (3d Cir. 2011). But we have not addressed whether it allows class-wide injunctive relief in the specific scenario at issue here: a class in which every member is "an individual alien against whom proceedings . . . have been initiated." 8 U.S.C. § 1252(f)(1).

We conclude it does not. As the Supreme Court has explained, "[b]y its plain terms, and even by its title, [§ 1252(f)(1)] is nothing more or less than a limit on injunctive relief" that "prohibits federal courts from granting classwide injunctive relief against the operation of §§ 1221–123[2]." *Reno v. American-Arab Anti-Discrimination Comm.*, 525 U.S. 471, 481 (1999) [hereinafter *AADC*]; *see also Nken v. Holder*, 556 U.S. 418, 431 (2009) (describing § 1252(f)(1) as "a provision prohibiting classwide injunctions against the operation of removal provisions"). Of course, "[t]he Court in *AADC* did not consider . . . the application of § 1252(f)(1) to . . . a class" in which every member is an individual who is already in immigration proceedings, *Jennings*, 138 S. Ct. at 875 (Breyer, J., dissenting), and the Supreme Court, too, has treated that as an open question, *see id.* at 851 (majority opinion). But as *AADC* suggests, the plain text of § 1252(f)(1)

26

bars class-wide injunctions because they necessarily "enjoin . . . the operation" of § 1226(c) "with respect to" more than just "an individual alien." 8 U.S.C. § 1252(f)(1); *see AADC*, 525 U.S. at 481.[11]

We therefore join the Sixth and Tenth Circuits in holding that § 1252(f)(1) prohibits class-wide injunctions even where the class is composed entirely of individuals who are already in removal proceedings. *See Hamama v. Adducci*, 912 F.3d 869, 877 (6th Cir. 2018); *Van Dinh v. Reno*, 197 F.3d 427, 433 (10th Cir. 1999). *But see Padilla v. Immigr. & Customs Enforcement*, 953 F.3d 1134, 1151 (9th Cir. 2020), *vacated on other grounds by Immigr. & Customs Enforcement v. Padilla*, 141 S. Ct. 1041 (2021). Accordingly, the District Court erred in entering a class-wide injunction here, and we will vacate that order and remand for the entry of the appropriate declaratory relief under *Alli*. *See* 650 F.3d at 1016.[12]

---

[11] Plaintiffs cite *Califano v. Yamasaki*, 442 U.S. 682 (1979), which held that "[t]he fact that [a] statute speaks in terms of an action brought by 'any individual' . . . does not indicate that the usual Rule providing for class actions is not controlling," *id.* at 700. But *Califano* concerned who could bring a claim, holding that individual claims can be aggregated in class actions, *id.*, while § 1252(f)(1) concerns the scope of relief that can be granted and bars injunctions that affect "the application" of § 1226(c) "with respect to" more than just "an individual," 8 U.S.C. § 1252(f)(1). *Califano* is thus inapposite.

[12] At oral argument, Plaintiffs asserted that although § 1252(f)(1) uses the word "jurisdiction," 8 U.S.C.

## IV. Conclusion

For the foregoing reasons, we will affirm the District Court's summary judgment order in part, reverse in part, vacate the entry of injunctive relief, and remand for the entry of appropriate declaratory relief.

---

§ 1252(f)(1), it is not a jurisdictional statute, so the Government could—and in Plaintiffs' view did—forfeit its § 1252(f)(1) argument by failing to cross-appeal. As a general matter, Plaintiffs are correct that "a party aggrieved by a decision of the district court must file an appeal in order to receive relief from the decision," *United States v. Tabor Court Realty Corp.*, 943 F.2d 335, 342 (3d Cir. 1991), and that there is a distinction to be made between "the question whether there is jurisdiction to adjudicate the controversy" and "[t]he nature of the relief available after jurisdiction attaches," *Avco Corp. v. Aero Lodge No. 735, Int'l Ass'n of Machinists and Aerospace Workers*, 390 U.S. 557, 561 (1968); *see also Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 90 (1998); *Swift & Co. v. United States*, 276 U.S. 311, 331 (1928); *United States v. Hart*, 983 F.3d 638, 642 (3d Cir. 2020). Here, however, our adoption of a preponderance standard in lieu of a probable cause standard expands Plaintiffs' rights relative to the District Court's order, so the Government may raise § 1252(f)(1) to defend against that expansion even in the absence of a cross-appeal. *See Morley Const. Co. v. Maryland Cas. Co.*, 300 U.S. 185, 191 (1937); *cf. Tabor Court Realty*, 943 F.2d at 342.

28